IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINNACLE ARMOR, INC., | CASE NO. CV F 07-1655 LJO DLB |
| Plaintiff, | **ORDER ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiff Pinnacle Armor, Inc. ("Pinnacle" or "plaintiff") filed a motion for a preliminary injunction requiring, inter alia, the defendant and its agents, the Director of the United States Department of Justice and the Director of the National Institute of Justice, to grant Notice of Compliance status to Plaintiff's body armor, "Dragon Skin," and to print a public statement that Plaintiff's body armor is in compliance with standards for body armor, among other things. Defendant United States filed an opposition on December 28, 2007. Plaintiff did not file a reply brief. Pursuant to Local Rule 78-230(h), this matter was submitted on the pleadings without oral argument, and the hearing set for January 8, 2008 was vacated. Having considered the moving and opposition papers, as well as the Court's file, the Court issues the following order.

**FACTUAL OVERVIEW**

Pinnacle is a Fresno company which produces a unique and patented flexible body armor. Pinnacle produces several different vests, each type defeating a different level of ballistic threat. The body armor which is the subject of this lawsuit is more commonly referred to as "Dragon Skin." The parties alternatively refer to the body armor as either Dragon Skin or "SOV2000.1/MIL3AF01."

Plaintiff claims that Unites Stated Department of Justice ("DOJ") and the National Institute of Justice ("NIJ") violated plaintiff's constitutional rights by revoking the Dragon Skin's designation as "compliant" with NIJ safety standards.

**A.     The National Institute of Justice**

In 1979, Congress established the NIJ to create a research and development agency focused on, among other issues, "improving Federal, State and local criminal justice systems and related aspects of the civil justice system." 42 U.S.C. § 3721(1). Congress authorized the NIJ to "support research, development, testing, training, and evaluation of tools and technology for Federal, State, and local law enforcement agencies." 42 U.S.C. § 3722(c)(11).  The NIJ, through its Office of Science and Technology, is responsible for establishing and maintaining performance standards for law enforcement technologies utilized by federal, state, and local law enforcement agencies, and for testing and evaluating these law enforcement technologies. See 6 U.S.C. § 162(b)(3).  NIJ maintains a voluntary compliance program, referred to by defendant as the "BACTP," to test body armor for civilian law enforcement use. 42 U.S.C. §3796ll-2(1); Declaration of Marc Caplan ¶3.  NIJ promulgates the standards for testing body armor by outside laboratories.  Following testing by outside testing laboratories, the NIJ will issue a Notice of Compliance to those manufacturers whose body armor has satisfied the testing criteria.  The testing criteria are known as the "2005 Interim Requirements."  As relevant to this case, once the armor is compliant, state and local law enforcement agencies may apply for federal funds to purchase those armor models listed on the "Listing of Compliant Armor."

Plaintiff argues that the NIJ and DOJ publications on officer safety are significant to law enforcement agencies.  In the United States, there are about 12,000 law enforcement agencies.  The NIJ has three privately owned body armor testing laboratories that it uses for compliance testing.  NIJ then compiles and publishes the list of body armor which has failed any testing protocol for a declared threat level.  Plaintiff argues that "Being on the List" demonstrates that the body armor has passed the NIJ testing protocol and allows for federal assistance for up to 50% of the cost of the body armor.

**B.     Testing and Compliance**

Defendant states plaintiff has voluntarily participated in the BACTP for over six years, and has seven body armor models listed on the NIJ's Listing of Compliant Armor.  None are Dragon Skin

1  technology. Plaintiff submitted the SOV2000.1/MIL3AF01 to the NLECTC National for testing in the
2  BACTP. Plaintiff arranged to have one of the NIJ-approved ballistics testing laboratories – United
3  States Test Laboratory – conduct ballistics testing on September 13, 2006. The armor was retested on
4  November 17, 2006 and passed the ballistics test. The NIJ issued a Notice of Compliance on December
5  20, 2006 and listed the Dragon Skin on its Listing of Compliant Armor.

6  In 2007, the NIJ became concerned that the Dragon Skin would be unable to maintain its
7  structural integrity under heat, cold, or temperature cycling conditions. The temperature cycling issue
8  was an issue initially raised by the Department of Defense. The NIJ requested that plaintiff provide data
9  demonstrating the Dragon Skin's ability to maintain its ballistic performance over its 6-year warranty
10 period.

11 After reviewing evidence submitted by Pinnacle, the NIJ determined that plaintiff had provided
12 insufficient evidence regarding the SOV2000.1/MIL3AF01's ability to maintain its ballistic performance
13 over its 6-year warranty period. In an August 3, 2007 letter, the NIJ informed plaintiff that, effective
14 immediately, the SOV2000.1/MIL3AF01 was deemed no longer compliant with the 2005 Interim
15 Requirements and would be removed from the NIJ's Listing of Compliant Armor. The NIJ issued a
16 press release, stating that plaintiff had not provided sufficient evidence to demonstrate the
17 SOV2000.1/MIL3AF01 would maintain its ballistic performance over its declared 6-year warranty
18 period.

19 Following the NIJ's determination, plaintiff submitted additional data as to the integrity of the
20 body armor at high temperatures. NIJ reviewed this data and once again determined that the data was
21 insufficient that the SOV2000.1/MIL3AF01 would maintain its ballistic performance over its 6-year
22 warranty period. In a September 28, 2007 letter, the NIJ informed plaintiff of this decision.

23 **C.    Notice of Compliance for Body Armor**

24 Plaintiff argues that flexible body armor like the dragon skin is new and NIJ had not established
25 testing protocol until September 2006. The testing protocol adopted in 2006 included more shots per
26 plate. The Dragon Skin body armor defeated the specific threat and qualified to be listed as approved
27 body armor. In September and November 2006, the United States Test Laboratory notified Pinnacle that
28 the body armor satisfied the ballistic requirements of NIJ Standard 0101.04 "including all changes to

1  the standard." In December 2006, NIJ issued a "notice of compliance" to Pinnacle for the SOV-
2  2000.1/MIL3AF01 body armor. Law enforcement agencies began contracting with Pinnacle.

3  Plaintiff argues that NBC published television segments that showed the Pinnacle body armor
4  was superior to the body armor the Army was purchasing for its soldiers. In June 2007, NIJ took the
5  SOV-2000.1/MIL3AF01 off of the list of the approved body armor because the U.S. Army suggested
6  the body armor was defective at temperature extremes. Plaintiff argues that the NIJ standards do not test
7  for durability or temperature on body armor. The Army uses an entirely different standard for body
8  armor testing. Plaintiff argues that none of the Army's testing standards have been adopted by NIJ, but
9  NIJ applied the Army's standards to Pinnacle's body armor. Pinnacle then received NIJ's revocation of
10 the Notice of Compliance.

11 **D.      Pinnacle's Attempts to Have the Notice of Compliance Reinstated**

12 Plaintiff tried to get the Notice of Compliance reinstated. Pinnacle provided supplemental data
13 to NIJ to show that the ballistic integrity of the SOV-2000.1/MIL3AF01 was not compromised with
14 cycling temperatures - -160 degrees to minus 60 degrees. Additional data was provided as to the
15 mechanical cycling where the body armor was bent and straightened. Plaintiff argues that the data was
16 rejected and the Notice of Compliance was not reinstated.

17 **E.      Required Labeling of the Body Armor Vests**

18 Plaintiff states that manufacturers of body armor are required to insert a label on the body armor
19 that notifies whether the body armor has been tested by NIJ and the results of the test. The label
20 identifies whether the body armor has been certified by NIJ and if the body armor complies with NIJ
21 Standards. When the body armor passed the NIJ Standards, Pinnacle placed labels on its body armor
22 stating that the body armor had passed the standard.

23 Now that the Notice of Compliance is revoked, Pinnacle must put labels in that state the armor
24 does not meet the NIJ standards. But, in fact, the Pinnacle body armor passed the NIJ Standards. NIJ
25 revoked the compliance based on purported failure to pass the Army's Standards. The label is damaging
26 Pinnacle's reputation.

27 Defendant argues that it does not require a manufacturer to label its body armor as non-compliant
28 once the model loses its compliance status. The 2005 Interim Requirements only state that such models

may not be labeled as compliant with NIJ standards.

**F.    Disparaging Public Comments**

Plaintiff argues that requiring the labeling in the body armor, which now states that the body armor failed the NIJ Standard, results in extreme and irreparable harm to Pinnacle's reputation and business. Sales have fallen off dramatically, body armor is being returned and persons are demanding their money back. In addition, defendants published a notice about SOV-2000.1/MIL3AF01 that suggested the body armor is dangerously defective - but suggesting that it be worn until it is replaced. The damaging statements about the SOV-2000.1/MIL3AF01 have caused law enforcement agencies to cancel contracts.

**G.    Denied FOIA**

Pinnacle made a Freedom of Information Act request related to the rejection of the Notice of Compliance. Pinnacle was informed the cost of the information would be over $23,000. Pinnacle narrowed the request to basically the information that NIJ referred in its June 22, 2007 letter revoking the Notice of Compliance.

**PROCEDURAL OVERVIEW**

Plaintiff filed its First Amended Complaint on December 4, 2007. Plaintiff alleges claims for:

1. Fifth Amendment to the U.S. Constitution - Taking, Substantive and Procedural Due Process,
2. Judicial Review pursuant to the Administrative Procedures Act,
3. Fifth Amendment to the U.S. Constitution - Equal Protection,
4. Freedom of Information Act ("FOIA").

Plaintiff alleges that NIJ wrongfully revoked the compliance status for the SOV2000.1/MIL3AFO1 and failed to provide it information necessary to allow it to have the SOV2000.1/MIL3AF01's compliance status reinstated.

The remedy sought by Pinnacle in this motion is for a Court order directing defendants to:

1. Cease publishing false, derogatory and harmful statements about plaintiff's body armor which has negatively affected plaintiff's reputation, business and income,
2. Print public retractions of such false and derogatory statements,

3.     Cease requiring plaintiff to place false information in its body armor labels, which information is harmful to plaintiff's reputation, business and income,

4.     Permit plaintiff to place truthful labels in its body armor which indicate that its body armor has passed al National Institute of Justice ("NIJ") tests for compliance with the NIJ standards,

5.     Enjoin the removal of plaintiff's body armor from the NIJ list of body armor found in compliance with NIJ standards for body armor,

6.     Cease from publishing the revocation of plaintiff's NIJ Notice of Compliance,

7.     Print a public statement that plaintiff's body armor is in compliance with NIJ's standard for body armor, and

8.     Affirmative relief ordering the NIJ to comply with the requirements of the federal Freedom of Information Act (FOIA).

## ANALYSIS AND DISCUSSION

**A.    Injunction's standards**

The legal principles applicable to a request for preliminary injunctive relief are well established. To prevail, the moving party must show either "(1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [the moving party's] favor." *Oakland Tribune, Inc. v. Chronicle Publishing Company, Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985), *quoting Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984); *see also Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985). These two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown. *Oakland Tribune*, 762 F.2d at 1376. "Under either formulation of the test [for injunctive relief], plaintiff must demonstrate that there exists a significant threat of irreparable injury." *Id.*

A preliminary injunction's purpose is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830 (1981). "Status quo" means the last uncontested status that preceded the pending

6

controversy. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Additional criteria must be satisfied for a preliminary injunction to be available to a plaintiff:

1. A strong likelihood of success on the merits;
2. Possibility of irreparable harm to plaintiff absent an injunction;
3. Threatened injury to plaintiff outweighs damage which the proposed injunction may cause to the opposing party; and
4. Public interest favors issuance of an injunction.

*See Regents of the Univ. of California v. American Broadcasting Companies, Inc.*, 747 F.2d 511, 515 (9th Cir. 1984); *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).

**B.     Plaintiff Seeks a Mandatory Injunction**

Injunctions are classified as "mandatory" or "prohibitory" depending on their effect on the person enjoined. A mandatory injunction, as opposed to a prohibitory one, does not maintain the status quo, but rather compels the performance of an affirmative act. *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). The person named in a mandatory injunction must undo the wrong or injury with which he or she is charged. Mandatory preliminary injunctions alter the status quo by commanding some positive act and are "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). In addition, a heightened standard is applied where the moving party seeks to enjoin governmental action taken in the public interest pursuant to a statutory or regulatory scheme. In such cases, the moving party must establish both irreparable injury and a probability of success on the merits. *NAACP, Inc. v. Town of East Haven*, 70 F.3d 219, 223  (2nd Cir. 1995) (hiring of police and firefighters). When a mandatory injunction is requested, the district court should deny such relief "unless the facts and law clearly favor the moving party. " *Stanley*, 13 F.3d at 1320. Thus, the Court's first task is to determine whether plaintiff requests a prohibitory injunction or a mandatory injunction.

In this case, Pinnacle was granted a Notice of Compliance for its "Dragon Skin" on December 20, 2006, and the armor was listed on the NIJ Listing of Compliant Armor. Shortly afterwards, the NIJ argues it received information causing it to question the "Dragon Skin" structural integrity under heat,

cold or temperature cycling conditions. After an investigation by NIJ based on information it received and reviewed, which is the subject of the dispute in this case, NIJ issued a September 28, 2007 letter that insufficient evidence was submitted to prove that the "Dragon Skin" would comply with certain temperature variations. As a result of the September 28, 2007 letter, the Dragon Skin lost its compliance status. Thus, by November 16, 2007, the date this action was filed in the Court, Pinnacle had already lost its compliance with NIJ standards.

In this action, plaintiff seeks to compels defendant to perform affirmative acts. Plaintiff seeks to compel defendant to return the Dragon Skin to the NIJ Listing of Compliant Armor, seeks retractions of statements made by NIJ, and seeks publications that the Dragon Skin complies with NIJ standards, among other things. Plaintiff's request for defendant to "perform positive acts" is the quintessential characteristic of mandatory relief. Thus, plaintiff seeks a mandatory injunction. *Stanley*, 13 F.3d at 1320 (A mandatory injunction is particularly disfavored under the law of this circuit).

### 1. Irreparable Harm

In light of mandatory injunction relief, the Court must consider whether the law and the facts clearly favor granting such relief. To obtain a preliminary injunction, Pinnacle is required to demonstrate that it will suffer irreparable injury. *Stanley v. University of Southern California*, 13 F.3d at 1320.

Plaintiff argues the removal of the body armor from the Notice of Compliance list, the disparaging public statements, and the required self-defaming labeling on jackets is causing ongoing irreparable injury to Pinnacle's reputation and business. (Doc. 8, Moving Papers p.16.) Pinnacle presents evidence that specific contracts are being canceled, and body armor is being returned for refunds. (Doc. 8-1, Murray Neal Decl. ¶5.) Evidence is presented that Pinnacle is unable to refund the money and has missed a payroll. (*Id.*) Further, evidence is submitted that Pinnacle is on the "verge of financial ruin." (*Id.*)

A "substantial loss of business and perhaps even bankruptcy" absent preliminary injunctive relief shows "irreparable injury." *Doran v. Salem Inn, Inc.,* 422 US 922, 932, 95 S.Ct. 2561, 2568 (1975). However, "Mere financial injury ... will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc. v. Superior Court of Cal.*, 739 F.2d 466, 471-72 (9th Cir.1984); *Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850 (9th

Cir.1985) ("economic injury alone is not considered irreparable.").

The harm relied upon by Pinnacle is purely financial in nature. The conclusory evidence, if accepted, shows that the removal of plaintiff's Dragon Skin from the Notice of Compliance list has financially harmed plaintiff. Other evidence submitted shows that Pinnacle has at least seven other body armor which remain on the Notice of Compliance list. Pinnacle does not present evidence how these products factor into it financial stability or instability.

Conversely, the United States demonstrates that the harm from granting a preliminary injunction may endanger the safety of law enforcement officers. The defendant notes that it has a statutory mandate from Congress to ensure the safety of public safety officers. (Doc. 12, Opposition p. 24.) To that end, NIJ has developed and promulgated standards for testing and approval of body armor performance. These standards are designed to ensure uniformity in safety of law enforcement officers. When the public interest is involved, "courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *United States v. First Nat'l City Bank*, 379 U.S. 378, 383, 85 S.Ct. 528, 53 (1965).

Here, plaintiff asks the Court to circumvent testing and safety standards embodied in the 2005 Interim Requirements and mandate that the Dragon Skin complies with NIJ standards. This the Court cannot do. The balance of possible financial harm to plaintiff, as compared to the possible endangerment of law enforcement officers, decidedly tips <u>against</u> granting the preliminary injunction.[1] Accordingly, the harm to defendant, and third parties, outweighs the financial harm to plaintiffs. "The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *State of Alaska ex rel. Yukon Flats School Dist. v. Native Village of Venetie*, 856 F2d 1384, 1389 (9th Cir. 1988).

Accordingly, since the balance of hardships would substantially harm defendant and its statutory mandate, plaintiff must clearly show a substantial likelihood of prevailing. The "balance of harm"

---

[1] The Court does not make any finding of fact of whether or not the Dragon Skin meets the NIJ testing and safety requirements.

1 evaluation should precede the "likelihood of success" analysis ... because until the balance of harm has
2 been determined the court cannot know how strong and substantial must be plaintiff's showing of likely
3 success on the merits. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 813–814 (4th Cir.
4 1991); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999) (preliminary injunction may be
5 granted only when moving party has demonstrated a significant threat of irreparable injury irrespective
6 of the magnitude of the injury). Therefore, plaintiff must make a clear showing of probability of success
7 on the merits.

**2.     No Clear Showing of Probability of Success on the Merits**

Pinnacle alleges that NIJ's revocation of the compliance status violated its Fifth Amendment substantive and procedural due process rights, was also a Taking and in violation of Equal Protection. Pinnacle has not made a clear showing of the probability of success on the merits.

To succeed on these claims, plaintiff must show that it had a property interest in the Notice of Compliance status. In *Greenwood v. F.A.A.*, 28 F.3d 971, 976 (9th Cir. 1994), the court held that a plaintiff does not have a property interest where the decision is left to the complete discretion of the granting agency. "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source." *Greenwood*, 28 F.3d at 976.

Plaintiff has not refuted the discretion granted to NIJ for issuing a Notice of Compliance or the discretion granting for revoking a Notice of Compliance. For instance, in the 2005 Interim Requirements, the NIJ explicitly reserves the right to revoke Notice of Compliance status for a manufacturer's body armor model, if, among other things, the NIJ "determines, at any time, that the evidence provided to NIJ as described in [] ¶2(b)(3) and/or in connection with the model is insufficient to demonstrate to the satisfaction of NIJ that the model will maintain its ballistic performance over its declared warranty period." (Doc. 12-5, Marc Caplan Decl. Exh. A.)

Nowhere in Pinnacle's Memorandum of Points and Authorities has Pinnacle identified any authority for the proposition that the Notice of Compliance is a property right, the deprivation of which requires the "opportunity to be heard," or is the subject of constitutional protection. Without a valid property right, plaintiffs claims for due process and takings fail. Thus, plaintiff has failed to establish

1  that it has a property interest in the Notice of Compliance status.  Without a property interest, plaintiff
2  cannot succeed on a claim for procedural or substantive due process or for a taking under the Fifth
3  Amendment.

4  **C.     Equal Protection Claim**

5  Again, Pinnacle's Memorandum of Points and Authorities does not identify how it was unequally
6  treated or how the revocation of the Notice of Compliance rises to an equal protection challenge.

7  To state a viable Equal Protection claim, "a plaintiff must show that the defendants acted with
8  an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."
9  *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.2001).  Alternatively, plaintiff must show that the
10 Notice of Compliance is a fundamental right.  *See Nelson v. City of Irvine*, 143 F.3d 1196, 1205 (9th
11 Cir.1998) (rational basis test applies unless a classification trammels fundamental rights or implicates
12 a suspect classification), *cert. denied*, 525 U.S. 981 (1998).

13 Pinnacle is not in a protected or suspect class.  Pinnacle is a business which challenges a federal
14 agency's decision. Thus, it is not in a suspect class.  In addition, Pinnacle has not shown that the Notice
15 of Compliance is a fundamental right.

16 The only way to succeed is for Pinnacle to show it is a "class of one."  The Supreme Court
17 recognized class-of-one equal protection actions in *Village of Willowbrook v. Olech*, 528 U.S. 562, 120
18 S.Ct. 1073 (2000).  The plaintiff may proceed on the class-of-one theory, where a "plaintiff alleges that
19 she has been intentionally treated differently from others similarly situated and that there is no rational
20 basis for the difference in treatment." *Id.* at 564.  The Ninth Circuit has applied the class-of-one theory
21 in the regulatory context to forbid government actions that are arbitrary, irrational, or malicious. See
22 *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944-48 (9th Cir. 2004); *see also Valley*
23 *Outdoor, Inc. v. City of Riverside*, 446 F.3d 948, 955 (9th Cir. 2006) (applying class-of-one theory to
24 city's denial of billboard permits).  However, although a "successful equal protection claim may be
25 brought by a class of one, the plaintiff still bears the burden of proving that she has been intentionally
26 treated differently from others similarly situated and that there is no rational basis for the difference in
27 treatment." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

28 Here, plaintiff has failed to carry its burden of proving that either it was intentionally treated

differently from others similarly situated, or that it lacks a rational basis for the difference in treatment. While plaintiff presents evidence that its Notice of Compliance was rejected, plaintiff fails to present evidence of others similarly situated. Moreover, there is evidence of a rational basis for the NIJ decision - concern for officer safety. Accordingly, there is no clear showing that plaintiff was subject to prohibited unconstitutional treatment. As a result, plaintiff has not shown a substantial probability of success on the merits.

**D.    Administrative Procedures Act**

The Administrative Procedure Act (APA) grants federal court standing to any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The APA, however, precludes judicial review when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1) and (2). *Adams v. F.A.A.*, 1 F.3d 955 (9th Cir.1993), *cert. denied*, 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 657 (1994), similarly found that purely discretionary agency decisions are beyond the scope of judicial review.

The only evidence before the Court is that the NIJ's decision was discretionary. In other words, plaintiff has failed to carry its burden that NIJ's decision was nondiscretionary. Indeed, the NIJ's 2005 Interim Requirements states that for manufacturers who choose to participate in the BACTP, the NIJ retains the discretion to determine, at any time, the sufficiency of written certifications and the evidence that underlies them, through "random or other assessments" of these certifications and the evidence underlying them. (Doc. 12-5, Marc Caplan Decl. Exh. A.) Accordingly, there is not a substantial likelihood that the APA claim will succeed.

**E.    FOIA Requests**

Plaintiff's last claim is for documents under the Freedom of Information Act.

FOIA provides "a statutory right of public access to documents and records held by federal government agencies." *Gould, Inc. v. General Services Admin.*, 688 F.Supp. 689, 693 (D.D.C. 1988). FOIA requires a record request to "reasonably" describe requested records and to comply with "published rules stating the time, place, fees (if any), and procedures to be followed." *See* 5 U.S.C. § 552(a)(3)(A). Prior to seeking judicial review, a record requester must exhaust his/her administrative remedies, including filing a proper FOIA request. *Sands v. United States*, 1995 WL 552308, *3 (S.D.

Fla. 1995); *see Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir. 1979).  If a records requester fails to exhaust administrative remedies, the lawsuit may be dismissed for lack of subject matter jurisdiction.  *Heyman v. Merit Systems Protection Board*, 799 F.2d 1421, 1423 (9th Cir. 1986), *cert. denied*, 481 U.S. 1019 (1987).

Plaintiff has not provided any authority for the proposition that the claim for the Freedom of Information Act documents supports a claim for an injunction.  Further, defendant states in its opposition brief, that plaintiff has provided the necessary payment for the documents and the documents are being provided to plaintiff.  (Doc. 12, Opposition p.21:23-25.)

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for a preliminary injunction is DENIED.

IT IS SO ORDERED.

**Dated:   January 7, 2008**               /s/ Lawrence J. O'Neill
                                           UNITED STATES DISTRICT JUDGE