1
2
3
4
5
6
7
8
9
10
11
12

### IN THE UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINNACLE ARMOR, INC., | CASE NO. CV F 07-1655 LJO DLB |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION TO DISMISS** |
| vs. | (Doc. 17.) |
| UNITED STATES OF AMERICA, | |
| Defendants. | |
| _____/ | |

### INTRODUCTION

Defendant United States of America ("Government") seeks F.R.Civ.P. 12(b)(6) dismissal of plaintiff Pinnacle Armor, Inc.'s ("Pinnacle's") due process, taking and administrative violation claims on grounds that revocation of Pinnacle's bulletproof vest as compliant with federal standards was discretionary to bar Pinnacle's claims. This Court considered the Government's motion to dismiss on the record, pursuant to Local Rule 78-230(h). As discussed below, this Court GRANTS the Government F.R.Civ.P. 12(b)(6) relief and DISMISSES Pinnacle's claims.

1

# BACKGROUND

## Pinnacle's Body Armor

Pinnacle is a Fresno corporation and produces armor for buildings, vehicles and humans. Pinnacle produces various bulletproof vests which prevent increasing levels of ballistic threats. Pinnacle's bulletproof vest model at issue here is the "flexible" SOV2000.1/MIL3AF01, which incorporates Pinnacle's patented "dragon skin" technology of overlapping ceramic discs to allow the wearer to flex and bend as needed.[1]  Pinnacle faults the U.S. Department of Justice ("DOJ") and National Institute of Justice's ("NIJ's") revocation of the dragon skin model's designation as "compliant" with NIJ safety standards.

## NIJ

In 1979, Congress established NIJ as a research and development agency to improve "Federal, State and local criminal justice systems and related aspects of the civil justice system." 42 U.S.C. § 3721(1).  Congress authorized NIJ to "support research, development, testing, training, and evaluation of tools and technology for Federal, State, and local law enforcement agencies." 42 U.S.C. § 3722(c)(11).  NIJ is further authorized to "collect and disseminate information obtained by the [NIJ] or other Federal agencies, public agencies, . . . and private organizations."  42 U.S.C. § 3722(c)(6).

NIJ, through its Office of Science and Technology ("OST"), establishes and maintains performance standards for technologies utilized by federal, state, and local law enforcement agencies, and to test and to evaluate such technologies.  *See* 6 U.S.C. § 162(b)(3).  OST may "establish and maintain a program to certify, validate, and mark or otherwise recognize law enforcement technology products that conform to standards established and maintained by the Office in accordance with the National Technology Transfer and Advancement Act of 1995."[2] 6 U.S.C. § 162(b)(4).  To that end, OST operates the Body Armor Compliance Testing Program (" BACTP"), a voluntary compliance testing program to test body armor for civilian law enforcement use.  42 U.S.C. §3796ll-2(1).

---

[1]     For convenience, this Court will refer to the subject SOV2000.1MIL3AF01 model as the "dragon skin" model.

[2]     The National Technology Transfer and Advancement Act encourages federal agencies to benefit from private industry expertise to develop and implement voluntary standards.

**The BACTP**

The BACTP's primary purpose is to ensure that commercial body armor satisfies NIJ's safety and effectiveness standards.  To voluntarily participate in the BACTP, a body armor manufacturer must submit an application package with certifications and acknowledgments.  If NIJ is satisfied that tested armor models comply with NIJ safety standards, known as the 2005 Interim Requirements for Bullet-Resistant Body Armor ("2005 interim requirements"), NIJ issues a notice of compliance for the model and includes the model on NIJ's compliance list.  Under the Bulletproof Vest Partnership Act ("BVPA"), state and local law enforcement agencies may apply for federal funds to purchase armor models on NIJ's compliance list.  According to Pinnacle, inclusion on the compliance list demonstrates that a model has passed NIJ testing protocol and allows for federal assistance for up to 50 percent of the model's cost.

Pinnacle alleges that until fall 2006, NIJ had developed no procedure or protocol to test flexible body armor.  Pinnacle alleges that it spent hundreds of thousands of dollars to test dragon skin through NIJ's test laboratories during 1999-2006 and that test results show that dragon skin passed all NIJ tests for a type three ballistics threat.

**The 2005 Interim Requirements**

NIJ promulgated the 2005 interim requirements to modify and supplement NIJ Standard 0101.04 and "to address recent NIJ research findings that indicate that certain body armor models previously found by NIJ to be compliant with earlier NIJ requirements for ballistic resistence of new body armor . . . may not adequately maintain ballistic performance during their service life."  The 2005 interim requirements provide that "NIJ intends to implement a plan to conduct random or other assessments of the certifications and the evidence that underlies them."  The 2005 requirements further provide that all models submitted to NIJ's voluntary compliance testing program are subject to:

1.   "Submission of evidence . . . that demonstrates **to the satisfaction of NIJ** that the model will maintain ballistic performance (consistent with its originally declared threat level) over its declared warranty period"; or

2.   Written certification of a manufacturer's officer that he/she reasonably believes that the model will maintain ballistic performance (consistent with its originally declared threat level) over its declared warranty period, has objective evidence to support such belief,

3

1    and agrees to provide NIJ, "promptly on demand, that evidence." (Bold added.)

2  The Government notes that the 2005 interim requirements give NIJ discretion to determine the

3  sufficiency of evidence and materials submitted to support a manufacturer's application to the BACTP.

4    The 2005 interim requirements empower NIJ to remove a model from its compliance list if,

5  among other things, NIJ determines that: (1) a certificate or acknowledgment submitted for a model is

6  insufficient or inaccurate; or (2) evidence is insufficient to demonstrate to NIJ's satisfaction that the

7  model will maintain its ballistic performance (consistent with its originally declared threat level) over

8  its declared warranty period.  The 2005 interim requirements conclude: "Amor manufactured during a

9  period in which the amor model does not comply (or is deemed not to comply) with the NIJ 2005 Interim

10 Requirements shall not be labeled as compliant with them."  Pinnacle notes that the compliance list

11 revocation process "provides NIJ with discretion to determine if the evidence is sufficient to demonstrate

12 to the NIJ's satisfaction that the model will maintain its ballistic performance over its declared warranty

13 period."

14              **Removal Of The Dragon Skin Model From The Compliance List**

15    Pinnacle has voluntarily participated in the BACTP for more than six years and has seven body

16 armor models on NIJ's compliance list.  None of the compliant models includes dragon skin technology

17 incorporated in the dragon skin model.  Pinnacle notes that in fall 2006, NIJ adopted a procedure and

18 protocol to test flexible body armor and that Pinnacle is the only producer of flexible body armor.

19 Pinnacle submitted the dragon skin model to NIJ for testing in the BACTP.  Pinnacle arranged for an

20 NIJ-approved ballistics testing laboratory to conduct ballistics testing on the dragon skin model in

21 September 2006.  The dragon skin model was retested in November 2006 and passed the ballistics

22 testing.  NIJ issued a notice of compliance for the dragon skin model on December 20, 2006 and listed

23 it on its compliance list.  Pinnacle claims that "law enforcement agencies all around the U.S.A. began

24 taking advantage of the [BVPA] funds and began ordering much product."  Pinnacle claims that it "spent

25 many hundreds of thousands of dollars producing vests for law enforcement agencies on reliance upon

26 the [BVPA] funds available due to the NIJ granting Pinnacle the 'Notice of Compliance.'"

27    In 2007 after receiving information from the Department of Defense about dragon skin ballistic

28 performance, NIJ became concerned that the dragon skin component was unable to maintain  structural

4

integrity under heat, cold, or temperature cycling conditions.  In June 2007 and pursuant to the 2005 interim requirements, NIJ requested Pinnacle to provide data to demonstrate the dragon skin model's ability to maintain ballistic performance over its six-year warranty period.

Pinnacle submitted testimonials of dragon skin model wearers, photographs of armor panels manufactured in 2002, and laboratory test results for a dragon skin model returned from the field after four years of service.  NIJ reviewed the evidence and determined that it lacked critical data related to temperature cycling and environmental stresses.  NIJ concluded that the evidence was insufficient to demonstrate the dragon skin model's ability to maintain its ballistic performance over its six-year warranty period.  NIJ noted concern that "the mechanical integrity of the 'Dragon Skin' component of the body armor model may not be maintained under environmental stress."  NIJ's August 3, 2007 letter informed Pinnacle that, effective immediately, the dragon skin model was no longer compliant with the 2005 interim requirements and would be removed from the NIJ's compliance list.  The letter reminded Pinnacle of the 2005 interim requirements' provision not to label noncompliant models as compliant.

NIJ issued a press release that Pinnacle had provided insufficient evidence to demonstrate that the dragon skin model would maintain its ballistic performance over its six-year warranty period.  Pinnacle alleges that DOJ and NIJ published statements that the dragon skin model was "no longer compliant with the NIJ Standard and that it is dangerous to use."

In August 2007, Pinnacle submitted additional data as to, among other things, the integrity of the body armor at high temperatures.  NIJ determined that the data was insufficient that the dragon skin model would maintain its ballistic performance over its six-year warranty period.  NIJ's September 28, 2007 letter informed Pinnacle of NIJ's decision and reasons, including lack of information directly related to the dragon skin model, lack of adequate explanation of relevance of test samples to the dragon skin model, insufficient test sample history, insufficient ballistic testing, insufficient adhesive evidence, and insufficient evidence as to environmental exposures.  With its September 28, 2007 letter, NIJ permitted Pinnacle to "provide additional evidence."  Pinnacle submitted no further information.

Pinnacle notes that NBC aired programs that showed that the dragon skin model was superior to the body armor which the U.S. Army provided to its soldiers.  Pinnacle claims NIJ removed the dragon skin model from its compliance list because the Army suggested that the dragon skin model was

1   defective at temperature extremes.  Pinnacle points out that NIJ standards do not test for durability or

2   temperature on body armor and that the Army uses different standards for body armor testing.  Pinnacle

3   contends that NIJ has not adopted the Army's testing standards but applied them to the dragon skin

4   model prior to NIJ's removal of the dragon skin model from the compliance list.

5                                            **Pinnacle's Claims**

6          Pinnacle proceeds on its first amended complaint ("FAC") and claims it spent hundreds of

7   thousands of dollars to test the dragon skin model in two NIJ-certified testing laboratories for the

8   model's original NIJ compliance.  Pinnacle alleges that "NIJ illegally delegated its authority to revoke

9   the 'Notice of Compliance' to the Army, which did not apply the NIJ Standard to the Dragon Skin body

10  armor, but instead imposed the Army's own rogue, unscientific and non duplicable testing on the Dragon

11  Skin."  Pinnacle further alleges that NIJ revoked the dragon skin model from the compliance list based

12  "on a standard that the NIJ had not promulgated by rule or adopted and which was not applicable" to the

13  dragon skin model.  In its FAC, Pinnacle claims: "Applying for and receiving a 'Notice of Compliance'

14  which is then revoked pursuant to a secret standard placed Pinnacle in a worse position than had it not

15  applied for a 'Notice of Compliance' at all. . . . The revocation of the 'Notice of Compliance' acts as a

16  penalty because now the vest label must indicate that it is not compliant with the Standard."  According

17  to Pinnacle, law enforcement agencies have canceled contracts or have not contracted with Pinnacle.

18         The FAC alleges a (first) Fifth Amendment takings and due process cause of action that NIJ's

19  "Notice of Compliance" "became both a property right of Pinnacle and a liberty interest of Pinnacle."

20  The cause of action further alleges that the "Notice of Compliance" for the dragon skin model "was

21  revoked without notice of hearing rights, without discovery of the data that was reviewed which resulted

22  in the revocation and without an opportunity to be heard."

23         The FAC alleges a (second) Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, et seq.,

24  cause of action that "NIJ failed to provide Pinnacle with notice of a hearing and a meaningful

25  opportunity to be heard regarding both the revocation of the 'Notice of Compliance' and the derogatory

26  and unsupported negative statements about the danger in using the body armor."  The cause of action

27  further alleges that NIJ "acted arbitrarily and capriciously" and abused discretion.

28         The FAC seeks:

                                                  6

1   1. Declaratory relief the revocation of the "Notice of Compliance" was illegal and that the

2     "Notice of Compliance" is current and effective;

3   2. Mandamus to direct NIJ to apply appropriate standards to Pinnacle's applications for

4     "Notice of Compliance" on its body armor;

5   3. Injunctive relief to force DOJ and NIJ to retract public statements about dangers of the

6     dragon skin model and to issue public statements that the dragon skin model is not

7     dangerous and is "superior to all other body armor in its class"; and

8   4. Unspecified damages.

9  The FAC also alleges (third) Fifth Amendment equal protection and (fourth) Freedom of

10 Information Act, 5 U.S.C. §§ 552, et seq., causes of action.  Pinnacle has withdrawn the third and fourth

11 causes of action.

12           **<u>DISCUSSION</u>**

13  The Government contends that NIJ's discretionary function to revoke a model from its

14 compliance list bars Pinnacle's claims to warrant F.R.Civ.P. 12(b)(6) dismissal.  A F.R.Civ.P. 12(b)(6)

15 motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a

16 federal court reviews the sufficiency of a complaint, before the reception of any evidence either by

17 affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will

18 ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer*

19 *v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d

20 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a

21 cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

22 *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard,*

23 *Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

24  In resolving a Rule 12(b)(6) motion, the court must:  (1) construe the complaint in the light most

25 favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

26 whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

27 *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  "However, conclusory allegations of law and

28 unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d

1  696, 699 (9th Cir. 1998).  A court need not permit an attempt to amend a complaint if "it determines that

2  the pleading could not possibly be cured by allegation of other facts."  *Cook, Perkiss and Liehe, Inc. v.*

3  *N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

4       In a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint.

5  *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).  Nonetheless, a court

6  may consider exhibits submitted with the complaint.  *Van Winkle*, 290 F.Supp.2d at 1162, n. 2 A court

7  may also consider "documents 'whose contents are alleged in a complaint and whose authenticity no

8  party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP,*

9  *Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  As

10  such, this Court may consider documents referenced in the FAC.

11                                       **Property Interest**

12       The Government faults Pinnacle's Fifth Amendment claims in absence of Pinnacle's property

13  interest to maintain the dragon skin model on NIJ's compliance list.  The Government argues that

14  Pinnacle must demonstrate a legitimate claim of entitlement that the dragon skin model remain on NIJ's

15  compliance list without interruption.

16       Pinnacle responds that the dragon skin model's notice of compliance "was more than just a bare

17  license, it was a type of property" in that Pinnacle received the right to possess, manage, license, dispose

18  of and protect the notice of compliance.  Pinnacle notes that it worked with NIJ "for years, jointly

19  developing a testing procedure and protocol for flexible body armor" and that NIJ relied on Pinnacle's

20  expertise as the sole flexible body armor manufacturer to assist NIJ to develop "a testing procedure and

21  protocol for flexible body armor."  Pinnacle points to its expenditure of hundreds of thousands of dollars

22  in a "joint project" with NIJ and its "expectation of this multi-hundred thousand dollar investment over

23  a period of years . . . that the Notice of Compliance would not be taken away lightly, but with due

24  process."

25       "As a threshold requirement to any due process claim, the plaintiffs must show that they have

26  a protected property . . . interest."  *Kraft v. Jacka*, 872 F.2d 862, 866 (9th Cir. 1989).  In addressing

27  property interests, the U.S. Supreme Court has explained:

28            To have a property interest in a benefit, a person clearly must have more than an

8

1   abstract need or desire for it.  He must have more than a unilateral expectation of it.  He
2   must, instead, have a legitimate claim of entitlement to it.

3   *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972).

4   Property interests are not created by the Constitution, "they are created and their dimensions are defined

5   by existing rules or understandings that stem from an independent source."  *Roth*, 408 U.S. at 577, 92

6   S.Ct. at 2709 (untenured state university professor had no legitimate claim of entitlement to

7   reemployment).

8          If a regulation at issue vests "significant discretion over the continued conferral of that benefit,

9   it will be the rare case that the recipient will be able to establish an entitlement to that benefit."  *Kelly*

10  *Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175 (2nd Cir. 1991).  Agency discretion over benefit conferral

11  suggests that "no entitlement to that benefit existed."  *Vermont Assembly of Home Health Agencies, Inc.*

12  *v. Shalala*, 18 F.Supp.2d 355, 368 (D. Vt. 1998).  To determine whether an agency has discretion over

13  continued benefit conferral, courts "ordinarily look to the degree to which the federal government has

14  restrained its own discretion" relating to the benefit.  *Federal Lands Legal Consortium v. United States*,

15  195 F.3d 1190, 1197 (10th Cir. 1999); *see Jacobs, Visconsi & Jacobs, Co. v. Lawrence*, 927 F.2d 1111,

16  1116 (10th Cir. 1996) ("we focus on the degree of discretion given the decisionmaker.")  "Any significant

17  discretion conferred upon the local agency defeats the claim of a property interest."  *Gardner v. City of*

18  *Baltimore*, 969 F.2d 63, 68 (4th Cir.1992) (applying to substantive due process challenge).

19         However, a statute may create a constitutionally protected property interest, if the statute or its

20  implementing regulations "place substantive limitations on official discretion."  *3383 Connecticut LLC*

21  *v. District of Columbia*, 191 F.Supp.2d 90, 94 (D.D.C. 2002).  "Statutes or regulations limit official

22  discretion if they contain explicitly mandatory language, i.e., specific directives to the decisionmaker

23  that if the regulations substantive predicates' are present, a particular outcome must follow."  *3383*

24  *Connecticut*, 191 F.Supp.2d 90, 94 (citations omitted).  If a benefit is a "matter of statutory entitlement

25  for persons qualified to receive them," a property interest in that benefit is created.  *Goldberg v. Kelly*,

26  397 U.S. 254, 262, 90 S.Ct. 1011 (1970).

27         The Government contends that the 2005 interim requirements grant NIJ "significant" and

28  "unrestrained" discretion to confer and to revoke compliance status of bulletproof vests.  The 2005

9

interim requirements provide: "Any body armor model submitted by a manufacturer to the NIJ Voluntary Compliance Testing Program . . . shall be subject to the following requirements: 1.  Satisfaction, **as determined by NIJ**, of all of the requirements of NIJ Standard 0101.04 . . ." (Bold added.)  The 2005 interim requirements empower NIJ "to conduct random or other assessments of the certifications and the evidence that underlies them" to ensure accuracy of certifications and in turn compliance with NIJ standards.  As to loss of compliance status, the 2005 interim requirements further empower NIJ to revoke a model from the compliance list if "NIJ determines, **at any time**, that the evidence provided to NIJ . . . is insufficient to demonstrate to the **satisfaction of NIJ** that the model will maintain its ballistic performance (consistent with its originally declared threat level) over its declared warranty period."

The 2005 interim requirements grant NIJ significant discretion to oversee whether a bulletproof vest model remains on it compliance list.  The 2005 interim requirements grant NIJ to its "satisfaction" determination whether NIJ standards are met and to review further evidence to NIJ's "satisfaction: whether a "model will maintain ballistic performance."  The 2005 interim requirements undeniably empower NIJ to remove a model from is compliance list.  Continuance on NIJ's compliance list is akin to renewal of a license in that "an applicant does not have a property interest in the renewal of a license if the reviewing body has discretion to deny renewal or to impose licensing criteria of its own creation." *Thorton v. City of St. Helens*, 425 F.3d 1158, 1165 (9th Cir. 2005).  Moreover, Pinnacle acknowledges that the compliance list revocation process "provides NIJ with discretion to determine if the evidence is sufficient to demonstrate to the NIJ's satisfaction that the model will maintain its ballistic performance over its declared warranty period."

The Government criticizes Pinnacle's claim that Pinnacle's property interest arises from spending hundreds of thousands of dollars to test the dragon skin model to achieve NIJ compliance status in that such money was expended prior to Pinnacle's receipt of a notice of compliance.  "A property interest protected by the Constitution is an 'interest[ ] that a person has already acquired in [a] specific benefit[ ].'" *Cevallos v. City of Los Angeles*, 914 F.Supp. 379, 383 (C.D. Cal. 1996) (quoting *Roth*, 408 U.S. at 576, 92 S.Ct. at 2709).  Moreover, the Ninth Circuit Court of Appeals has rejected that "a constitutionally protected property interest can be spun out of the yarn of investment-backed expectations." *Peterson v. U.S. Dept. Of Interior*, 899 F.2d 799, 813 (9th Cir.), *cert. denied*, 498 U.S.

1003 (1990).  Investment-backed expectations do not create a property interest and are unilateral.  *See*

*Brenzier v. Ray*, 915 F.Supp. 176, 182 (C.D. Cal. 1996).  The Government correctly notes that Pinnacle's

expectation that the dragon skin model would remain on NIJ's compliance list was unilateral and a not

a valid entitlement.  Despite Pinnacle's claims, the FAC fails to allege an express or implied contract

or that Pinnacle and NIJ followed established procedures to enter in a governmental contract.  In sum,

in the absence of a constitutionally protected property interest in remaining on the compliance list,

Pinnacle's due process and takings claims fail.

Pinnacle appears to claim that it has a property interest in its "good will" and that DOJ and NIJ's

published statements that the dragon skin model was "no longer compliant with the NIJ Standard,"

"dangerous to use" and "should be replaced" support a takings claim.  Pinnacle acknowledges that

"[r]eputation alone, is not a protected property interest – unless, it is attached to something more."

Curiously, Pinnacle cites to *WMX Technologies, Inc. v. Miller*, 80 F.3d 1315 (9th Cir. 1996), where

plaintiff pursued takings claims against a district attorney who prepared and disseminated a report

linking to organized crime the plaintiff applicant for a landfill permit.  The Ninth Circuit Court of

Appeals observed:

> . . . this case only involves defamatory remarks made to the public generally which allegedly injured the plaintiff's business reputation.  This is not sufficient to satisfy the requirement that a constitutionally protected property interest be at stake.  Damage to business reputation without more does not rise to the level of a constitutionally protected property interest.

*WMX Technologies*, 80 F.3d at 1319.

Pinnacle fails to demonstrate that it alleges anything more than damage to business reputation.

Pinnacle acknowledges that NIJ could properly communicate that the dragon skin model was removed

from the compliance list due to a failure of evidence which NIJ "deemed sufficient to establish that the

product would maintain its ballistic integrity over the period of its declared six-year warranty."  Pinnacle

challenges alleged statements that the dragon skin model was dangerous and should be replaced.

Alleged statements as to the safety of the dragon skin model go to the heart of the compliance matter.

That is, if the dragon skin model failed to meet NIJ standards, it was unsafe pursuant to the standards.

Alleged safety statements do not arise to the level of infringement on a property interest.

The Government further contends that Pinnacle is unable to base a substantive due process claim

11

1  on a state created business goodwill.  "Substantive due process claims are not based on state law but are

2  founded upon deeply rooted notions of fundamental personal interests derived from the Constitution"

3  *Graves v. Thomas*, 450 F.3d 1215, 1220 (10th Cir. 2006).  Pinnacle's substantive due process claims fail

4  to the extent they are based on state law.  *See Greenbriar Village, LLC v. Mountain Brook, City*, 345

5  F.3d 1258, 1262 (11th Cir. 2003) (no substantive due process claim for alleged deprivation of state

6  created right).

7      To further criticize Pinnacle' takings claim, the Government notes that Pinnacle voluntarily

8  participated in the BACTP.  There is no property taking "where the regulated group is not required to

9  participate in the regulated industry."  *Whitney v. Heckler*, 780 F.2d 963, 972 (11th Cir. 1986).  Since

10  Pinnacle admits that it voluntarily participated in the BACTP, its takings claim is further negated.

11      The Government further attacks Pinnacle's procedural due process claim in that Pinnacle

12  "received adequate process" evidenced by a series of communications between the parties that Pinnacle

13  was heard before NIJ removed the dragon skin model from its compliance list.  "To be entitled to

14  procedural due process, a party must show a liberty or property interest in the benefit for which

15  protection is sought."  *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 975 (9th Cir. 1994).  In the

16  absence of a property interest, Pinnacle's procedural due process claim fails.

17      Nonetheless, Pinnacle was afforded due process to address the compliance status of the dragon

18  skin model. In June 2007, NIJ, pursuant to the 2005 interim requirements, requested Pinnacle to provide

19  data regarding dragon skin's ability to maintain ballistic performance over its six-year warranty period.

20  Pinnacle submitted several wearers' testimonials, photos of 2002 models on which Pinnacle intended

21  to conduct ballistic testing, and test results for models returned from the field after four years of service.

22  NIJ determined that the submitted materials lacked critical data related to temperature cycling and

23  environmental stresses and that Pinnacle had provided insufficient data that the dragon skin model would

24  maintain ballistic performance over its six-year warranty period.  In August 2007, NIJ removed the

25  dragon skin model from its compliance list.  NIJ reviewed additional material provided by Pinnacle and

26  again determined that such data was insufficient that the dragon skin model would maintain its ballistic

27  performance over its six-year warranty period.  With its September 28, 2007, letter NIJ gave Pinnacle

28  a further opportunity to provide evidence but Pinnacle submitted none.  The Government correctly notes

1   that NIJ notified Pinnacle of NIJ's concerns and gave Pinnacle opportunities to address them.

2   **APA Claims**

3       The Government contends that NIJ's decision to revoke the dragon skin model from its

4   compliance list is not subject to judicial review under the APA because such decision is "committed to

5   NIJ's discretion." Pinnacle appears to contend that NIJ's decision is subject to review whether it was

6   arbitrary and capricious.

7       The APA provides a general cause of action to a person "adversely affected or aggrieved by

8   agency action within the meaning of a relevant statute," 5 U.S.C. § 702, but withdraws that cause of

9   action to the extent the relevant statute "preclude[s] judicial review" or "agency action is committed to

10   agency discretion by law," 5 U.S.C. § 701(a)(1) and (2). *Adams v. Federal Aviation Admin.*, 1 F.3d 955,

11   956 (9th Cir. 1993), *cert. denied*, 510 U.S. 1044, 114 S.Ct. 690 (1994). "Agency action is unreviewable

12   when 'the statute is drawn so that a court would have no meaningful standard against which to judge the

13   agency's exercise of discretion." *Adams*, 1 F.3d at 956 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830,

14   105 S.Ct. 1649, 1655 (1985)). "Such determination is statute specific and relates to the language of the

15   statute and whether the general purposes of the statute would be endangered by judicial review." *County*

16   *of Esmeralda v. Dept. of Energy*, 925 F.2d 1216, 1218 (9th Cir. 1991).

17       The Government notes the absence of: (1) "judicially manageable standards under which this

18   Court may review the NIJ's determinations"; and (2) "statutory provisions that govern the NIJ's

19   decisions to confer or revoke compliance status." As addressed above, the 2005 interim requirements

20   vests NIJ with discretion to remove a bulletproof vest model from NIJ's compliance list without

21   statutory restraint. Again, under the 2005 interim requirements, NIJ may "conduct random or other

22   assessment of the certifications and the evidence that underlies them." The 2005 interim requirements

23   permit NIJ to revoke a model's compliance status when NIJ determines that certifications or underlying

24   evidence is insufficient to demonstrate to NIJ's satisfaction that the model complies with NIJ standards.

25   Such discretion rests with NIJ to further its Congressional mandate to improve law enforcement officer

26   safety. *See* 6 U.S.C § 162.

27       An "agency's predictive judgment regarding a matter within its sphere of expertise is entitled to

28   'particularly deferential' review." *Fresno Mobile Radio, Inc. v. Federal Communications Comm.*, 165

F.3d 965, 971 (D.D.C. 1999); *see Havana Club Holding, S.A. v. Galleon S.A.*, 961 F.Supp. 498, 505 (S.D.N.Y.) (agency decision to grant or revoke a license is committed to agency discretion and unreviewable under the APA where agency's regulations "do not specify grounds upon which amendment, modification[, or] revocation must be based" and grant the agency "the authority to take such action *sua sponte.*") Pinnacle fails to challenge NIJ's particularly deferential review.

Pinnacle appears to ignore the Government agency discretion and judicial preclusion arguments. Pinnacle acknowledges that NIJ "clearly has discretion to determine if its standards are met." Pinnacle appears to fault NIJ for failure to provide an administrative hearing. Pinnacle notes that absent a showing of arbitrary action, a court must assume that an agency has exercised its discretion appropriately. *Friends of Yosemite Valley v. Scarlett*, 439 F.Supp.2d 1074, 1082 (E.D. Cal. 2006). Thus, the standard is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Independent Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000). A court may reverse an agency's decision as arbitrary or capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the agency, or offered one that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Western Radio Services Co., Inc. v. Espy*, 79 F.3d 896, 900 (9th Cir.1996), *cert. denied*, 519 U.S. 822, 117 S.Ct. 80, 136 L.Ed.2d 38 (1996); *Dioxin/Organochlorine Center v. Clarke*, 57 F.3d 1517, 1521 (9th Cir.1995); *Friends of Yosemite*, 439 F.Supp.2d. at 1082-1083.

Pinnacle makes no attempt to demonstrate that NIJ acted arbitrarily and capriciously. Pinnacle fails to address relevant factors to support arbitrary and capricious action. In short, Pinnacle does not substantiate its APA claims.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court GRANTS the Government F.R.Civ.P. 12(b)(6) relief and DISMISSES Pinnacles (first) Fifth Amendment takings and due process cause of action and (second) APA violation cause of action. This Court DIRECTS the clerk to enter judgment in favor of defendant United States of America and against plaintiff Pinnacle Armor, Inc.

IT IS SO ORDERED.

1   **Dated:**   **March 11, 2008**                    **/s/ Lawrence J. O'Neill**
                                                        UNITED STATES DISTRICT JUDGE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28