1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

**PINNACLE ARMOR, INC.,**

**Plaintiff,**

v.

**UNITED STATES OF AMERICA,**

**Defendant.**

**1:07-CV-01655 LJO DLB**

**ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING REQUEST TO STRIKE DAMAGES PRAYER (DOC. 53)**

## I. INTRODUCTION

Plaintiff Pinnacle Armor, Inc. ("Pinnacle") produces armor designed to protect buildings, vehicles, and the human body. Among Pinnacle's primary customers are local law enforcement agencies that often utilize a federal subsidy to purchase body armor. Availability of the subsidy is conditioned upon certification that the body armor was manufactured in compliance with standards set by the National Institute of Justice ("NIJ"), an arm of the U.S. Department of Justice ("DOJ"). In its Verified First Amended Complaint ("FAC"), Pinnacle alleged that NIJ's decision to revoke certification for one of Pinnacle's products: (1) violated Pinnacle's procedural due process rights under the Fifth Amendment; and (2) was "arbitrary and capricious" in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Doc. 6.[1]

On March 11, 2008, the district court dismissed both claims, holding that Pinnacle's interest in NIJ certification is not a protected property right under the due process clause, and that NIJ's certification decision is exempt from review under the APA because the certification process is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2). Doc. 22. Pinnacle appealed. Doc. 24.

---

[1] The FAC also included equal protection and Freedom of Information Act claims. Doc. 6. Plaintiff voluntarily dismissed these claims. *See* Doc. 17-1 at 2 n. 2.

The Ninth Circuit affirmed on the Fifth Amendment claim, but reversed and remanded on the APA claim, directing the district court to conduct further proceedings. Doc. 35, filed May 26, 2011, *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708 (2011). After several continuances and a change of counsel by Pinnacle, Docs. 38, 39, 41, 42-45, 48-51, Defendant, the United States of America, now moves to dismiss the remaining APA claim for lack of jurisdiction pursuant to Fed R. Civ. P. 12(b)(1), Doc. 53. Plaintiff opposes dismissal. Doc. 57. Defendant replied. Doc. 59. The matter was originally set for hearing on July 5, 2012, but the hearing was vacated and the submitted for decision on the papers pursuant to Local Rule 230(g). Doc. 58.

## II. **BACKGROUND**

A.   **Facts.**

The pre-remand factual history is summarized succinctly in the Ninth Circuit's decision:

> As part of the Department of Justice, the NIJ is authorized to "improv[e] Federal, State, and local criminal justice systems and related aspects of the civil justice system [by] identifying programs of proven effectiveness ... or programs which offer a high probability of improving the functioning of the criminal justice system." 42 U.S.C. § 3721. The NIJ, through its Office of Science and Technology ("OST"), establishes and maintains performance standards for bulletproof vests and other law enforcement technologies. 6 U.S.C. § 162(b)(3), (b)(6). The OST is charged with "establish[ing] and maintain [ing] a program to certify, validate, ... or otherwise recognize law enforcement technology products that conform to standards established and maintained by the Office...." *Id*. § 162(b)(4).
>
> One of the programs the NIJ manages is the Body Armor Compliance Testing Program. Under this program, a manufacturer may submit its body armor to the NIJ for a determination of whether the armor complies with the NIJ's performance standards. If the product satisfies the standards, the NIJ includes it on a list of compliant body armor models. A product reaps a substantial benefit if it is found compliant: When state and local law enforcement agencies purchase body armor listed as "compliant" by the NIJ, the federal government subsidizes up to fifty percent of the purchase. *See* 42 U.S.C. §§ 3796ll, 3796ll–2.
>
> The NIJ issued compliance standards in 2001. *See* Nat'l Institute of Justice, U.S. Dept. of Justice, Ballistic Resistance of Personal Body Armor, NIJ Standard—0101.04, Revision A (June 2001) [hereinafter "NIJ Standard—0101.04 "]. After it learned that certain body armor models could wear out prematurely and that its 2001 compliance requirements did not adequately address this concern, the NIJ issued supplemental performance standards for body armor in 2005. *See* Nat'l Institute of Justice, U.S. Dept. of Justice, NIJ 2005 Interim Requirements for Bullet–Resistant Body Armor (Sept. 26, 2005) [hereinafter "2005 Interim Requirements"], [internet citation omitted]. In order to maintain

2

compliance, the 2005 Interim Requirements require the manufacturers of body armor to submit either "evidence ... that demonstrates to the satisfaction of the NIJ that the model will maintain ballistic performance (consistent with its originally declared threat level) over its declared warranty period," or a "written certification" by a manufacturer's officer stating that the officer believes the model will maintain ballistic performance; that the manufacturer has objective evidence to support that belief; and that the officer agrees to provide the NIJ with the evidence "promptly on demand" by the NIJ. The requirements provide that the NIJ will revoke a model's compliance status "at any time" if the evidence submitted by the manufacturer was "insufficient to demonstrate to the satisfaction of NIJ that the model w[ould] maintain its ballistic performance" over the model's declared warranty period.

Pinnacle manufactures body armor used by state and local government law enforcement agencies. One of its models, patented as "dragon skin," consists of overlapping ceramic discs, which allow the vest to be more flexible than other bulletproof vests. The parties do not dispute that dragon skin met the NIJ's 2001 requirements. *See* NIJ Standard—0101.04. The issue here is dragon skin's compliance with the 2005 Interim Requirements. To comply with the 2005 Interim Requirements, Pinnacle's officer issued a written certification declaring that he believed the vests would maintain their ballistic performance over the warranty period, that he had objective evidence to support this belief, and that he would submit the evidence to the NIJ on demand. In December 2006, the NIJ issued a Notice of Compliance to Pinnacle certifying that dragon skin, which had a six-year warranty period, was compliant with the NIJ's 2005 standards. Relying on this notice, Pinnacle spent hundreds of thousands of dollars producing vests for law enforcement agencies.

Subsequently, the NIJ received information from the Department of Defense that questioned the dragon skin model's durability under environmental stressors. The NIJ was particularly concerned about the effects of "temperature extremes and cycling" on the dragon skin model over time. Consistent with the 2005 Interim Requirements, the NIJ asked Pinnacle in June 2007, to provide documentation of the "data or other objective evidence that supports Pinnacle Armor's belief that [the dragon skin] model ... will maintain its ballistic performance (consistent with its originally declared threat level) over its declared warranty period of six years." In response, Pinnacle submitted testimonials of those who wore the dragon skin vest for over one year, photographs of armor panels, and a test report on a vest that had been turned in after four years of service. The NIJ found that this evidence was "insufficient to demonstrate to the satisfaction of NIJ that the model ... will maintain its ballistic performance ... over its declared warranty period." The NIJ stated that as of August 3, 2007, the dragon skin model would no longer be deemed compliant with the NIJ requirements and published statements to that effect.

648 F.3d at 711-14.

    Also on August 3, 2007, the NIJ, through DOJ's Office of Justice Programs, issued a press release stating that plaintiff had not provided evidence sufficient to demonstrate to the satisfaction of the NIJ that the Dragon Skin armor would maintain its ballistic performance over its declared 6-year warranty period. FAC ¶ 35; Doc. 2, Ex. T. Pinnacle submitted additional information on several more

occasions. Doc. 2 at Ex. N, O & P. After reviewing the additional evidence, NIJ nevertheless concluded that Pinnacle still had not sufficiently demonstrated that the dragon skin model would perform at the same level for six years. FAC ¶¶ 29-30. The NIJ identified several reasons why Pinnacle's evidence was insufficient and invited Pinnacle to provide additional evidence. Doc. 2 at Ex. R; *see also Pinnacle Armor*, 648 F.3d at 713. Pinnacle declined to submit any further evidence, choosing instead to file this lawsuit in November 2007.

**B.      Procedural History.**

        As discussed above, Pinnacle alleged that NIJ's decision to revoke certification for the Pinnacle' product in question: (1) violated its procedural due process rights under the Fifth Amendment; and (2) was "arbitrary and capricious" in violation of the APA, 5 U.S.C. § 706(2)(A). Doc. 6. The district court dismissed both claims. Doc. 22. The Ninth Circuit affirmed on the Fifth Amendment claim, finding that the Due Process Clause does not require that NIJ grant a formal hearing before revoking a finding of compliance with its standards. 648 F.3d at 717. All that is required is "notice and an opportunity for hearing <u>appropriate to the nature of the case</u>." *Id* (emphasis in original). The Ninth Circuit found NIJ's procedures provided Pinnacle a "full and fair opportunity to be heard on its claims." *Id*.

        On the APA claim, the Ninth Circuit described the district court's reasoning as follows:

> The district court's dismissal of the APA claims rested on two alternative grounds. First, the district court held that APA § 701(a)(2) precludes review of the NIJ's decision to issue a Notice of Compliance. That section provides that agency actions are unreviewable when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The district court held § 701(a)(2) precluded review because "the 2005 [I]nterim [R]equirements vest[ ] NIJ with discretion to remove a bulletproof vest model from NIJ's compliance list without statutory restraint." In the alternative, the district court held that even if § 701(a)(2) did not preclude review, Pinnacle's APA claim cannot succeed on the merits because Pinnacle "ma[de] no attempt to demonstrate that NIJ acted arbitrarily or capriciously," in violation of APA § 706(2)(A).

*Id*. at 718. As to the finding that judicial review is precluded by § 701(a)(2) (barring judicial review where "agency action is committed to agency discretion by law"), the Ninth Circuit reasoned:

We turn to the statute at issue to determine whether the NIJ was bound by a "meaningful standard against which [we can] judge the agency's exercise of discretion." *Heckler [v. Chaney,]* 470 U.S [821,] 830 [(1985)]. In this case, the statute tells us that OST, as a part of the NIJ, "shall have the ... dut [y] ... [t]o establish and maintain performance standards ... and test and evaluate law enforcement technologies," as well as "[t]o establish and maintain a program to certify, validate, and mark ... law enforcement technology products that conform to standards established and maintained by [OST]." 6 U.S.C. § 162(b)(3)-(4). Congress left it to the NIJ and OST to establish those standards. *Id.* § 162(b)(3) .

We may also look to "regulations, established agency policies, or judicial decisions" for a meaningful standard to review. *Mendez–Gutierrez v. Ashcroft*, 340 F.3d 865, 868 (9th Cir. 2003). In this case, we believe that, together, the 2005 Interim Requirements and the statute supply the standard against which we can judge the agency's decision-making. [T]he Requirements provide that body armor must conform to the detailed ballistic resistance criteria set out in NIJ Standard–0101.04 over its declared warranty period.

Furthermore, the Requirements specify that the NIJ "shall" revoke certification when it determines that the evidence and statements the manufacturer submitted are insufficient. 2005 Interim Requirements at 4. And it is also clear that the overriding purpose of the NIJ's certification program is to protect law enforcement officers. 6 U.S.C. § 162 (describing the mission of OST as to "carry out programs that, through the provision of equipment, training, and technical assistance, improve the safety and effectiveness of law enforcement technology and improve access to such technology by Federal, State, and local law enforcement agencies"). The NIJ recognizes this purpose in the 2005 Interim Requirements' introductory statement, which explains that the purpose of the NIJ's certification program is "to ensure the safety of public safety officers."

Although the Requirements provide that the NIJ determines the "sufficiency" of a manufacturer's evidence and statements, the Requirements do not give the NIJ unbridled discretion. Just because a statute calls on the agency to exercise its "judgment" in making its determination does not necessarily make an agency's action unreviewable. [Citation omitted] Indeed, although 5 U.S.C. § 701(a)(2) insulates from judicial review agency discretion where there is no law to apply, the APA itself commits final agency action to our review for "abuse of discretion." 5 U.S.C. § 706(2)(A); *see Heckler*, 470 U.S. at 829. Those standards are adequate to allow a court to determine whether the NIJ is doing what it is supposed to be doing: setting out standards and determining whether law enforcement products should be certified under those standards, whatever they may be. *See Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000) ("The fact that an agency has broad discretion in choosing whether to act does not establish that the agency may justify its choice on specious grounds. To concede otherwise would be to disregard entirely the value of political accountability, which itself is the very premise of administrative discretion in all its forms.").

*Id*. at 719-20. The Appeals Court concluded that § 701(a)(2) did not bar judicial review of Plaintiff's

APA claim. *Id*. at 721.

As to the alternative ground for dismissal pursuant to Rule 12(b)(6) because "Pinnacle ma[de] no attempt to demonstrate that the NIJ acted arbitrarily and capriciously," the Ninth Circuit reasoned that Pinnacle was "not required to 'demonstrate' anything in order to survive a Rule 12(b)(6) motion to dismiss." *Id*. Rather, "it only needs to allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id*. (*quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Finding that the FAC sufficiently set forth an APA claim because it "alleges that the methods the NIJ uses to test body armor bear no relation to the standard set out in the Requirements—namely, that the armor will maintain its ballistic integrity over the life of the warranty" and further "alleges that the NIJ violated the APA by failing to provide the data upon which revocation of the Notice of Compliance was based," the Ninth Circuit concluded Pinnacle "is entitled to proceed past the motion to dismiss." *Id*.

## C.      The "06 Standard" and Mootness on Appeal.

In 2008, during the pendency of the appeal, NIJ published a new set of requirements for the Body Armor Compliance Testing Program ("BACTP"). *Id*. at 714. The United States argued before the Ninth Circuit that the entire appeal was moot because the 2008 requirements, set forth in NIJ Standard -0101.06 (the "06 Standard"), superseded the 2005 Interim Requirements at issue in this case. *Id*.

Among other things, the 2008 requirements state:

> Publication of this revision of the standard does not invalidate or render unsuitable any body armor models previously determined by NIJ to be compliant to either the NIJ 2005 Interim Requirements or the NIJ Standard-0101.04 Rev. A Requirements.

06 Standard, Tillery Decl., Ex. 1, Doc. 53-3, at v. Focusing on this language, the Ninth Circuit refused to find the appeal moot:

> In order to be listed as compliant with the 2008 requirements, body armor must be submitted to and tested by the NIJ. The NIJ's new requirements are accompanied by sample laboratory configurations to help manufacturers prepare their products for the NIJ's tests. Although the NIJ accepted a written certification from an officer or independent evidence to establish conformity with its requirements under the 2005 Interim Requirements, under the 2008 requirements it no longer does so. Importantly, the

2008 requirements do not "invalidate or render unsuitable any body armor models previously determined by NIJ to be compliant [under] the NIJ 2005 Interim Requirements," but advise agencies to "always require their procurements to meet or exceed the most recent and up-to-date version of this standard."

\*\*\*

The 2008 Requirements explicitly state that they did not "invalidate or render unsuitable any body armor models previously determined by the NIJ to be compliant [under] the NIJ 2005 Interim Requirements." <u>Thus, if Pinnacle succeeds on its claim and the court declares that its armor was compliant with the 2005 Interim Requirements, its armor will be presumptively compliant under the current standards. In this way, the 2005 Interim Requirements continue to have a "brooding presence, cast[ing] what may well be a substantial adverse effect on the interests of the petitioning parties."</u> *Headwaters,* 893 F.2d at 1015 (quotation marks omitted).

The government argues that "any manufacturer wishing to participate in the Compliance Testing Program must submit its body armor for testing under the new [standards].... even if NIJ previously determined the body armor model compliant with the NIJ 2005 Interim Requirements." <u>But this is a misstatement of the requirements. The 2008 requirements clearly state that if the armor was compliant under the 2005 Interim Requirements, it is still compliant under the 2008 requirements and does not need to be retested.</u> Therefore, because the 2008 requirements do not require retesting of the armor deemed compliant under the 2005 Interim Requirements, whether the dragon skin model was compliant with the 2005 Interim Requirements remains a "present controversy." *Feldman,* 518 F.3d at 642 (citation omitted). The 2008 Requirements have no impact on this controversy.

*Id*. at 714-15 (emphasis added). In sum, the Ninth Circuit interpreted the 06 Standard's statement that "[p]ublication of this revision of the standard does not invalidate or render unsuitable any body armor models previously determined by NIJ to be compliant [under the 2005 Interim Requirements]" to mean that any armor compliant with the 2005 Interim Requirements was presumptively compliant with the 06 Standard.

**D.    Post-Remand Developments.**

On June 29, 2011, in response to the Ninth Circuit's "presumptive compliance" holding in *Pinnacle Armor,* 648 F.3d at 715, the NIJ issued an "Administrative Clarification" of the 06 Standard. *See* Tillery Decl., Doc. 53, ¶ 5 & Ex. 2. The Administrative Clarification directly addresses the 06

7

Standard's statement that that "[p]ublication of this revision of the standard does not invalidate or render unsuitable any body armor models previously determined by NIJ to be compliant [under the 2005 Interim Requirements]," by clarifying that this language was intended "to make clear to criminal justice agencies that the release of a new standard should not be interpreted as a recommendation to remove body armor from service which had been previously found compliant by the NIJ [Compliance Testing Program] with a previous version of the standard." *Id*., Ex. 2. The NIJ reiterated: "an agency's older armor may be considerably preferably to no armor at all until new armor determined by the NIJ CTP to be compliant with the current standard can be obtained." *Id*. Critically, "[t]he statement that older armors may not necessarily be considered to be 'unsuitable' for continued use in service until replaced <u>should not be read to suggest – in any way – that an armor model's compliance with a predecessor standard somehow equates to compliance under the most current, superseding standard</u>." *Id*. (emphasis added).

Although the NIJ-administered Bulletproof Vest Partnership ("BVP") grant program does not prohibit participating state and local law enforcement agencies from using their own funds to procure armor that does not comply with the most current NIJ standard, federal grant money can only be used to purchase armor models the NIJ has deemed in compliance with the most recent current standard. *Id*. at ¶¶ 6-7. All armor models, including models found compliant under an old standard, must be tested against the 06 standard to be included on the Listing of Compliant Armor and thus eligible for federal grant money. *Id*. at ¶¶ 5-6.

### III. <u>STANDARD OF DECISION</u>

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject-matter jurisdiction." Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A federal court is presumed to lack jurisdiction in a particular case unless the contrary

8

affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981).

A challenge to subject matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). As explained in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004):

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

"If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Cervantez v. Sullivan*, 719 F. Supp. 899, 903 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229 (9th Cir. 1992). "The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.*; *see also Cassirer v. Kingdom of Spain*, 580 F.3d 1048, 1052 n. 2 (9th Cir. 2009)*, rev'd on other grounds en banc*, 616 F.3d 1019 (9th Cir. 2010) (applying *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to a facial motion to dismiss for lack of subject matter jurisdiction).

In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). No presumptive truthfulness is due to the complaint's allegations that bear on the subject matter of the court. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). A court must hold an evidentiary hearing before resolving any disputed facts, *see Mason v. Arizona*, 260 F. Supp. 2d 807, 815 (D. Ariz. 2003), but the decision to conduct such a hearing lies within the court's discretion, *McLachlan v. Bell*, 261 F.3d 908, 910 (9th Cir. 2001). In the absence of a full-fledged

evidentiary hearing, disputes in the facts pertinent to subject matter are viewed in the light most favorable to the opposing party. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996). The disputed facts related to subject matter jurisdiction should be treated in the same way as one would adjudicate a summary judgment motion. *See id*.

Both sides have presented extrinsic evidence, which the Court will consider. Plaintiff has requested an evidentiary hearing "after a full and fair opportunity to discover and present relevant facts and arguments." Doc. 57 at 12. The Court declines to exercise its discretion hold an evidentiary hearing at this time and instead will view disputed facts in a light most favorable to Plaintiff.

## IV. <u>DISCUSSION</u>

### A.      <u>The Mootness Doctrine.</u>

Here, Defendant argues that the Court lacks subject matter jurisdiction over the case because Plaintiffs' claims are moot. An issue is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "The underlying concern is that, when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *Id.* (internal citations and quotations omitted). If the parties cannot obtain any effective relief, any opinion about the legality of a challenged action is advisory. *Id.* "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997) (internal citation and quotation omitted). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at 67.

Even if a case is technically moot, a case may nevertheless be justiciable if one of three

exceptions to the mootness doctrine applies: (1) where a plaintiff "would suffer collateral legal consequences if the actions being appealed were allowed to stand"; (2) where defendant voluntarily ceased the challenged practice; and (3) for "wrongs capable of repetition yet evading review." *Ctr. for Biological Diversity v. Lohn,* 511 F.3d 960, 964–66 (9th Cir. 2007). "The party asserting mootness has a heavy burden to establish that there is no effective relief remaining for a court to provide." *In re Palmdale Hills Property, LLC*, 654 F.3d 868, 874 (9th Cir. 2011).

**B.**     **Is the APA Claim Moot?**

The United States argues Plaintiff's APA claim is moot because the 2005 Interim Requirements are no longer in effect and the NIJ has clarified that it does not consider an armor's compliance under a superseded standard to be "presumptively compliant" under the current, 06 Standard.

**1.**     **Law of the Case Doctrine.**

Plaintiff argues that Defendant's motion should be denied outright because it "invites the Court to violate the law of the case doctrine." Doc. 57 at 7. Plaintiff is mistaken. The law of the case doctrine generally precludes a court from "reconsidering an issue that already has been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir, 1997). There is conflicting authority regarding whether the law of the case doctrine even applies to constitutional questions of jurisdiction, including mootness. *Compare Johnson v. Contra Costa County Sherriff's Dept*., 152 F.3d 926, *3 (9th Cir. 1998)(refusing to find that law of the case doctrine does not apply to prior rulings on mootness), *with In re Circle K Corp*., 19 F.3d 1439, *1 (9th Cir. 1994)(finding law of the case doctrine inapplicable to the question of whether an appeal is moot). Regardless, a court may "depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *Alexander*, 106 F.3d at

876.

Here, the issuance of an Administrative Clarification by the NIJ constitutes either "an intervening change in the law" or "other changed circumstances" warranting reconsideration of the question of mootness. *See Nat'l Treasury Employees Union v. Fed. Labor Relations Auth.*, 30 F.3d 1510, 1516 (D.C. Cir. 1994) (noting that issuance of interpretive guidance from responsible agency can "change the legal landscape" for purposes of the law of the case doctrine); *State Farm Mut. Auto. Ins. Co. v. Mallela*, 2002 WL 31946762, *8 (E.D.N.Y. Nov. 21, 2002) (finding that issuance of interpreting guidance might constitute "a compelling reason to exercise [] discretion to alter the law of the case...."). The law of the case doctrine does not bar consideration of the instant motion to dismiss.

### 2.    Is the APA Claim Moot?

Defendant's primary contention is that because the Administrative Clarification now makes clear that there is no "presumptive compliance" under the 06 Standard (i.e. that body armor manufacturers choosing to participate in the BACTP must submit their armor for testing under the 06 Standard regardless of whether the armor was deemed compliant under a prior standard), the APA claim in this case is now moot.

The APA claim in the FAC alleges:

> 53. The NIJ applied a vague/non[-]existent standard to Pinnacle's body armor to challenge the performance of its used body armor over a period of years. This standard is so vague that Pinnacle had no notice of how to comply with it, and which resulted in the revocation of the "Notice of Compliance." The NIJ admitted that no protocol exists to test the performance of used body armor over a period of years. This unknown secret standard has not been properly promulgated by the NIJ and should not have been applied to Pinnacle's body armor.

> 54. The NIJ applies a "service life" standard to body armor which is tied directly to the length of the manufacturer's warranty. The NIJ required Pinnacle to prove that their body armor will maintain its ballistic integrity over the length of its warranty. The NIJ states that "service life" has nothing to do with the warranty period, rather it has everything to do with the care and maintenance of body armor.

55. The NIJ failed to provide necessary information to Pinnacle about the data upon which the revocation was based, which information would be necessary so Pinnacle could properly respond to the revocation of the "Notice of Compliance" at a meaningful hearing.

56. The NIJ failed to provide Pinnacle with a notice of a hearing and a meaningful opportunity to be heard regarding both the revocation of the "Notice of Compliance" and the derogatory and unsupported negative statements about the danger in using body armor.

57. The NIJ acted arbitrarily and capriciously, they abused their discretion, their actions were not in accord with law and failed to meet the constitutional requirement, is not supported by the evidence and is unwarranted by the facts.

58.  WHEREFORE, Plaintiff requests as follows:

     a.    Declaratory relief that the revocation of the "Notice of Compliance" was illegal;

     b.    Declaratory relief that the "Notice of Compliance" is current and in effect;

     c.    Mandamus to direct the current director of the NIJ to apply the appropriate NIJ Standard(s) to Pinnacle's applications for "Notice of Compliance" on its body armor;[2]

     d.    Injunctive relief forcing the current directors of the DOJ and NIJ to retract their public statements about the danger in using SOV 2001/MIL3AF01, and to issue public statements that the Pinnacle body armor has not been found to be dangerous and in fact, that the evidence shows it to be superior to all other body armor in its class.[3]

---

[2] Although "mandamus" is not technically available under the APA, a mandatory/affirmative injunction may be available, but only where a Plaintiff seeks to compel "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see Independence Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). Plaintiff has not included such an allegation in the FAC. To the extent that Plaintiff instead requests relief under the Mandamus Act, 28 U.S.C. § 1361, a writ of mandamus may only issue if: (1) plaintiff has a clear right to relief; (2) defendants have a clear duty to act, and (3) no other adequate remedy is available. *See Johnson v. Reilly*, 349 F.3d 1149, 1153 (9th Cir. 2003). Mandamus cannot be used to compel or review discretionary acts of governmental officials. *Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1180 (9th Cir. 1983). "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).

[3] This is a request for affirmative injunctive relief, which is not an appropriate remedy in a case brought under APA § 706(2), which permits a court to "hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." 5 U.S.C. § 706(2); *see Slockish v. U.S. Fed. Highway Admin.*, 682 F. Supp. 2d 1178, 1198 (D. Or. 2010) ("[A]ffirmative injunctive relief … would only be available under § 706(1) of the APA which allows the court to 'compel agency action unlawfully withheld or unreasonably delayed[,]'

1

2          e.      Damages.

3          [f.]    Costs; and

4          [g.]    Attorney's fees pursuant to the Equal Access to Justice Act (28 USC
                   2412) or any other statute.
5

6    Doc. 6 at ¶¶ 53-58.

7          Plaintiff concedes that its APA claim has nothing whatsoever to do with whether the Dragon

8    Skin armor is compliant with the current standard (the 06 Standard) or whether the armor is currently

9    eligible for reimbursement under the Bulletproof Vest Partnership ("BVP"). Doc. 57 at 19-20. Rather,

10   this claim focuses on whether NIJ lawfully revoked the "Notice of Compliance" with the 2005 Interim

11   Standards.

12         The Ninth Circuit found that the issuance of the 06 Standard did not moot Plaintiff's APA claim

13   because the 06 Standard contained language suggesting that armor compliant with an older standard was

14   "presumptively compliant" with the 06 Standard. Therefore, the dispute articulated in the FAC's APA

15   claim, which revolves entirely around whether Defendant lawfully revoked the Notice of Compliance

16   with the 2005 Interim Requirements, was not moot because the 2005 Interim Requirements "continue[d]

17   to have a 'brooding presence, cast[ing] what may well be a substantial adverse effect on the interests of

18   the petitioning parties.'" *Pinnacle Armor*, 648 F.3d at 716 (internal citation omitted).

19         The Administrative Clarification, issued by the agency that promulgated the 06 Standard,

20   clarifies that the 06 Standard was never intended to render armor compliant with outdated standards

21   "presumptively compliant" with the 06 Standard. Taken at face value, this effectively eliminates the

22   "brooding presence" found by the Ninth Circuit because, according to the Clarification, compliance with

23

24

25

---

26   [b]ut in order to proceed under this provision, plaintiffs must establish that one of the defendant agencies 'failed to take a
     discrete agency action that it [was] required to take.'"). Remand is usually the appropriate remedy in § 706(2) cases. *See
27   Defenders of Wildlife v. U.S. Env't Protection Agency*, 420 F.3d 946, 978 (9th Cir. 2005), *rev'd on other grounds*, *Nat'l
     Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007).

28                                                        14

the 2005 Interim Requirements does <u>not</u> equate to presumptive compliance with the 06 Standard.

However, because the changed circumstances giving rise to Defendant's mootness argument was the result of Defendant's own act, the court must dig deeper. Even if a case is technically moot, a case may nevertheless be justiciable if one of three exceptions to the mootness doctrine applies, including the exception for a defendant's voluntary cessation of a challenged practice. *Ctr. for Biological Diversity v. Lohn,* 511 F.3d at 964–66. In light of this exception, the standard for demonstrating that a case has been mooted by a defendant's voluntary conduct is "stringent." *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000). Where circumstances suggest a policy change designed to alter challenged conduct was motivated by a desire to avoid further litigation, courts consider whether the change in conduct is accompanied by circumstances indicating the change is a "genuine" act of "self-correction." *See Magnuson v. City of Hickory Hills,* 933 F.2d 562, 565 (7th Cir.1991); *see also White*, 227 F.3d at 1243 (finding challenge to agency's investigatory practices moot after issuance of memorandum by agency official that *"*represents a permanent change in the way [the agency] conducts investigations, not a temporary policy that the agency will refute once this litigation has concluded").

Although these standards cannot be applied with perfect precision to the present circumstances, because the Administrative Clarification does not directly reverse the conduct challenged in this case (the revocation of the Notice of Compliance), the standards are instructive. Here, the agency has issued a formal interpretation of its 06 Standard. Although the agency admits it was motivated to do so by the Ninth Circuit's ruling, *see* Tillery Decl., Doc. 53, ¶ 5, the Administrative Clarification is a genuine effort to clarify what its own regulation was intended to accomplish. The Administrative Clarification represents a public commitment by the agency to interpret its regulation in a particular manner. Such interpretations are entitled to some degree of judicial deference, *see United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (giving *Skidmore* deference to interpretations contained in agency manuals or

enforcement guidelines); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (same as to opinion

letters); *Tablada v. Thomas*, 533 F.3d 800, 806 (9th Cir.2008) (giving *Skidmore* deference to a Program

Statement by the Bureau of Prisons), so long as the interpretation is reasoned and consistent with the

agency's prior interpretations, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (the weight

afforded an agency interpretation "will depend upon the thoroughness evident in its consideration, the

validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors

which give it power to persuade, if lacking power to control") (emphasis added); *Russell v. Wells Fargo

and Co.*, 672 F. Supp. 2d 1008, 1016 (N.D. Cal. 2009). The Administrative Clarification offers a

reasonable interpretation of the 06 Standards and nothing in the record suggests the position set forth in

the Clarification conflicts with any prior interpretation.

 The issuance of the Administrative Clarification removes the "brooding presence" identified by

the Ninth Circuit. In other words, in light of the Administrative Clarification, even if this court were to

vacate the NIJ's decision to revoke the Notice of Compliance with the 2005 Interim Requirements, this

would not automatically render the subject body armor compliant with the current standards and

therefore eligible for reimbursement under the BVP.

 Perhaps in anticipation of this result, Plaintiff alternatively argues: "the BVP is but one of many

sources of funding which are tied to NIJ compliance." *Id.* at 11. Plaintiff presents the declaration of

Murray Neal, the inventor of the Dragon Skin body armor, in support of the assertion that compliance

with the NIJ's 2005 Interim Requirements, even though they have been superseded, are "indeed useful

to both Plaintiff and the law enforcement agencies which desire to purchase the latest technology

flexible rifle defeating body armor such as Dragon Skin as they may collect reimbursement or other

funding from programs other than BVP, such as FEMA or federal RICO." *Id.* at 14. Although Mr. Neal

does touch upon the FEMA and "RICO" programs, he does not suggest that those programs would fund

purchases of armor only in compliance with a now-superseded NIJ standard.  Rather, he states

> Other programs exist and are available for the purchase of body armor vests, many of which require the purchase of vests which are compliant with NIJ standards. For example, it is my understanding that FEMA programs exist for the funding of the purchase of vests compliant with NIJ standards. Another example is federal RICO programs which I understand also provide funding for the purchase of vests compliant with NIJ standards.

Doc. 57-1 at ¶ 8. Mr. Neal "believ[es] that should NIJ compliance be reinstated under the 2005 Interim Requirements, law enforcement agencies would submit new purchase orders for the Dragon Skin body defeating armor, as they would be able to obtain reimbursement from non-BVP programs, such as FEMA and federal RICO." *Id.* This points out that programs other than the BVP rely on NIJ certification. The record establishes that NIJ certification turns on compliance with the most recent standards. The Administrative Clarification makes it clear that whether or not the subject armor complied with the 2005 Interim Requirements is not relevant to its certification under 06 Standards.

More helpful to Plaintiff's case is Mr. Neal's statement that "numerous" officers order body armor from Plaintiff on a "walk in" basis "so long as the armor meets one of the NIJ standards." Doc. 57-1 at ¶ 12. Thus, Mr. Neal states, "maintaining compliance status under the 2005 Interim Requirements continues to be important [] to Pinnacle Armor, Inc...." *Id.*

Rather than responding to this factual assertion, Defendant asserts that Plaintiff does not have standing to pursue a claim based upon this type of alleged injury because the injury is not redressable. Doc. 59 at 6. More specifically, Defendant argues that redress of such an injury "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id.* at 7 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)). Defendant glosses over the nuanced nature of this aspect of the standing jurisprudence, which was discussed at length by the U.S. Supreme Court in its seminal standing decision:

17

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When, however ... a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction-and perhaps on the response of others as well. The existence of one or more of the essential elements of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)  (opinion of KENNEDY, J.) [additional citation]; and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. [Citation] Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily "substantially more difficult" to establish. [Citation]

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). According to Lujan, the unfettered choices test is far more likely to be relevant in a case where the challenged government regulation is of someone other than the plaintiff.

Even if the "unfettered choices" test does apply more generally here, the mere intercession of a third party does not necessarily doom standing. A "chain of causation [may have] more than one link," so as long as the connection between the injury and cause is not "hypothetical or tenuous." *Nat'l Audubon Soc. v. Davis*, 307 F.3d 835, 849 (9th Cir.2002). In *Davis*, the Ninth Circuit found that the Audubon Society, an organization dedicated to protection and observation of birds, had standing to challenge a regulation that forbade the use of a certain type of game trap because "[r]emoval of the traps leads to a larger population of predators, which in turn decreases the number of birds and other protected wildlife." *Id*. The Ninth Circuit reasoned: "This chain of causation has more than one link, but it is not hypothetical or tenuous; nor do appellants challenge its plausibility." *Id*.

Here, at the motion to dismiss stage, Plaintiff has presented evidence to support a finding that

officers may purchase armor not in compliance with the most recent NIJ standard "so long as the armor meets one of the NIJ standards." Doc. 57-1 at ¶ 12. Thus, "maintaining compliance status under the 2005 Interim Requirements continues to be important [] to Pinnacle Armor, Inc...." *Id*. This is sufficient to establish standing at the motion to dismiss stage.[4]

Finally, according to Mr. Neal, NIJ and Plaintiff worked together to develop an extensive protocol under the 2005 Interim Requirements for the testing of flexible rifle-defeating body armor. *Id*. at ¶ 13. Yet, neither this protocol, nor any other protocol for flexible rifle defeating body armor, was included in the 06 Standard. *Id*. According to Mr. Neil, this means that "the only ... protocol suitable for testing Pinnacle Armor's novel Dragon Skin technology is the 2005 Interim Requirements." *Id*. In light of this purported gap in the 06 Standard, Plaintiff maintains that the 06 Standard has not completely displaced the 2005 Interim Requirements.

In response, rather than provide any evidence or legal argument that would help resolve the extent to which aspects of the 2005 Interim Requirements may have survived the promulgation of the 06 Standard, Defendant simply asserts that this is "a pure question of law the Court must answer." Doc. 59. This fails to satisfy Defendant's heavy burden to establish mootness, particularly in light of the legal standard that requires the Court view disputed facts in a light most favorable to Plaintiff.

In sum, although the Administrative Clarification eliminates the exact "brooding presence" described by the Ninth Circuit, Defendant has failed to meet its burden to demonstrate that the 06 Standard moots all aspects of Plaintiff's claim. The motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is DENIED WITHOUT PREJUDICE to its renewal upon a more developed factual record.

---

[4] Defendant also asserts that Plaintiff should not be permitted to pursue a claim based upon this type of alleged injury because plaintiff "is challenging NIJ's decision to revoke its armor model's compliance status in connection with its participation in the Bullet Proof Vest Partnership program." Doc. 59 at 6. This is an overly narrow view of Plaintiff's claim, which certainly touches upon the reputational implications of decertification under the 2005 Interim Requirements and resulting loss of business to Plaintiff. *See* Doc. 6 at ¶ 39.

**C.      Motion to Strike Request for Damages.**

Plaintiff seeks damages as part of its prayer for relief under the APA. FAC at ¶ 58. It is well-established that the APA's waiver of sovereign immunity does not extend to claims for money damages. 5 U.S.C. § 702 (granting judicial review in actions "seeking relief other than money damages" where numerous other prerequisites are satisfied); *see also Cato v. United States*, 70 F.3d 1103, 1111 (9th Cir. 1995). As a result, Defendant requests that the damages prayer be stricken.

Plaintiff objects that this request "does not properly go to the court['s] subject matter jurisdiction." Doc. 57 at 20. Although Plaintiff is technically correct that inclusion of a damages prayer among other requests for relief does not divest the court of subject matter jurisdiction over an otherwise valid APA claim, it is equally true that a district court lacks jurisdiction to adjudicate a request for damages under the APA. *Cook v. Sec'y of Air Force*, 850 F. Supp. 901, 904 (D. Or. 1994) ("[T]he 'other than money damages' bar of section 702 of the APA is an obstacle to the exercise of jurisdiction" by district court.).

Plaintiff requests "leave to amend ... so that it may cure any perceived defects" in connection with its damages prayer. But, Plaintiff has not advanced and the Court has been unable to identify any plausible basis for attaching a damages request to an APA claim. Consistent with the Federal Rules of Civil Procedure, if Plaintiff believes it can amend its complaint to include a non-futile claim for damages, it may file a motion for leave to amend.

Defendant's motion to strike the damages prayer in the APA claim is GRANTED.

## V. CONCLUSION AND ORDER

For the reasons set forth above:

(1) Defendant's motion to dismiss the remaining APA claim as moot is DENIED WITHOUT PREJUDICE.

1   (2) Defendant's motion to strike the damages prayer in the APA claim is GRANTED WITHOUT

2   LEAVE TO AMEND, but this is without prejudice to the filing of a properly supported motion

3   for leave to amend.

**SO ORDERED**
**Dated: July 19, 2012**

                                    _/s/ Lawrence J. O'Neill_
                                    **United States District Judge**

21