1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PINNACLE ARMOR, INC.,** | **1:07-CV-01655 LJO DLB** |
| **Plaintiff,** | **ORDER DENYING DEFENDANT'S THIRD MOTION TO DISMISS; AND DENYING IN PART AND DEFERRING IN PART DEFENDANT'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT (DOC. 64)** |
| v. | |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

## I. INTRODUCTION

Plaintiff Pinnacle Armor, Inc. ("Pinnacle") produces armor designed to protect buildings, vehicles, and the human body. Among Pinnacle's primary customers are local law enforcement agencies that often utilize federal subsidies to purchase body armor. Availability of at least one such subsidy is conditioned upon certification that the body armor was manufactured in compliance with the most recent standards set by the National Institute of Justice ("NIJ"), an arm of the U.S. Department of Justice ("DOJ"). In its Verified First Amended Complaint ("FAC"), Pinnacle alleged that NIJ's decision to revoke certification for one of Pinnacle's products: (1) violated Pinnacle's procedural due process rights under the Fifth Amendment; and (2) was "arbitrary and capricious" in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Doc. 6.[1]

On March 11, 2008, the district court dismissed both claims, holding that Pinnacle's interest in NIJ certification is not a protected property right under the due process clause, and that NIJ's certification decision is exempt from review under the APA because the certification process is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2). Doc. 22. Pinnacle appealed. Doc. 24.

---

[1] The FAC also included equal protection and Freedom of Information Act claims. Doc. 6. Plaintiff voluntarily dismissed these claims. *See* Doc. 17-1 at 2 n. 2.

1

The Ninth Circuit affirmed on the Fifth Amendment claim, but reversed and remanded on the APA claim, directing the district court to conduct further proceedings. Doc. 35, filed May 26, 2011, *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708 (2011).

Defendant, the United States of America, previously moved to dismiss the remaining APA claim as moot pursuant to Fed. R. Civ. P. 12(b)(1). Doc. 53. That motion was denied without prejudice. Doc. 61.[2]

Before the Court for decision is Defendant's renewed motion to dismiss this case as moot. Doc. 64. In the alternative, Defendant moves for summary judgment that: (a) Plaintiff lacks standing, and (b) cannot prevail on the merits. *Id*. Defendant also filed the Declaration of George C. Tillery and related exhibits. Docs. 64-2 - 64-4. Plaintiff filed an opposition, along with the September 26, 2012 Declaration of Murray Neal and related exhibits. Docs. 66 - 66-2. Defendant replied and filed another Declaration from George C. Tillery. Docs. 67 - 67-1. The motion was originally set for hearing on October 10, 2012, but the matter was submitted for decision on the papers pursuant to Local Rule 230(g). Doc. 68.

## II. BACKGROUND

### A.   Facts.

The pre-remand factual history is summarized succinctly in the Ninth Circuit's decision:

> As part of the Department of Justice, the NIJ is authorized to "improv[e] Federal, State, and local criminal justice systems and related aspects of the civil justice system [by] identifying programs of proven effectiveness ... or programs which offer a high probability of improving the functioning of the criminal justice system." 42 U.S.C. § 3721. The NIJ, through its Office of Science and Technology ("OST"), establishes and maintains performance standards for bulletproof vests and other law enforcement technologies. 6 U.S.C. § 162(b)(3), (b)(6). The OST is charged with "establish[ing] and maintain [ing] a program to certify, validate, ... or otherwise recognize law enforcement technology products that conform to standards established and maintained by the Office...." *Id*. § 162(b)(4).
>
> One of the programs the NIJ manages is the Body Armor Compliance Testing Program. Under this program, a manufacturer may submit its body armor to the NIJ for a determination of whether the armor complies with the NIJ's performance standards. If the

---

[2] Defendant's additional motion to strike Plaintiff's prayer for damages was granted. Doc. 61 at 20.

product satisfies the standards, the NIJ includes it on a list of compliant body armor models. A product reaps a substantial benefit if it is found compliant: When state and local law enforcement agencies purchase body armor listed as "compliant" by the NIJ, the federal government subsidizes up to fifty percent of the purchase. *See* 42 U.S.C. §§ 3796ll, 3796ll–2.

The NIJ issued compliance standards in 2001. *See* Nat'l Institute of Justice, U.S. Dept. of Justice, Ballistic Resistance of Personal Body Armor, NIJ Standard—0101.04, Revision A (June 2001) [hereinafter "NIJ Standard—0101.04"]. After it learned that certain body armor models could wear out prematurely and that its 2001 compliance requirements did not adequately address this concern, the NIJ issued supplemental performance standards for body armor in 2005. *See* Nat'l Institute of Justice, U.S. Dept. of Justice, NIJ 2005 Interim Requirements for Bullet–Resistant Body Armor (Sept. 26, 2005) [hereinafter "2005 Interim Requirements"], [internet citation omitted]. In order to maintain compliance, the 2005 Interim Requirements require the manufacturers of body armor to submit either "evidence ... that demonstrates to the satisfaction of the NIJ that the model will maintain ballistic performance (consistent with its originally declared threat level) over its declared warranty period," or a "written certification" by a manufacturer's officer stating that the officer believes the model will maintain ballistic performance; that the manufacturer has objective evidence to support that belief; and that the officer agrees to provide the NIJ with the evidence "promptly on demand" by the NIJ. The requirements provide that the NIJ will revoke a model's compliance status "at any time" if the evidence submitted by the manufacturer was "insufficient to demonstrate to the satisfaction of NIJ that the model w[ould] maintain its ballistic performance" over the model's declared warranty period.

Pinnacle manufactures body armor used by state and local government law enforcement agencies. One of its models, patented as "dragon skin," consists of overlapping ceramic discs, which allow the vest to be more flexible than other bulletproof vests. The parties do not dispute that dragon skin met the NIJ's 2001 requirements. *See* NIJ Standard—0101.04. The issue here is dragon skin's compliance with the 2005 Interim Requirements. To comply with the 2005 Interim Requirements, Pinnacle's officer issued a written certification declaring that he believed the vests would maintain their ballistic performance over the warranty period, that he had objective evidence to support this belief, and that he would submit the evidence to the NIJ on demand. In December 2006, the NIJ issued a Notice of Compliance to Pinnacle certifying that dragon skin, which had a six-year warranty period, was compliant with the NIJ's 2005 standards. Relying on this notice, Pinnacle spent hundreds of thousands of dollars producing vests for law enforcement agencies.

Subsequently, the NIJ received information from the Department of Defense that questioned the dragon skin model's durability under environmental stressors. The NIJ was particularly concerned about the effects of "temperature extremes and cycling" on the dragon skin model over time. Consistent with the 2005 Interim Requirements, the NIJ asked Pinnacle in June 2007, to provide documentation of the "data or other objective evidence that supports Pinnacle Armor's belief that [the dragon skin] model ... will maintain its ballistic performance (consistent with its originally declared threat level) over its declared warranty period of six years." In response, Pinnacle submitted testimonials of those who wore the dragon skin vest for over one year, photographs of armor panels, and a test report on a vest that had been turned in after four years of service. The NIJ found that this evidence was "insufficient to demonstrate to the satisfaction of NIJ that the model ... will maintain its ballistic performance ... over its declared warranty period." The NIJ stated that as of August 3, 2007, the dragon skin

3

model would no longer be deemed compliant with the NIJ requirements and published statements to that effect.

648 F.3d at 711-14.

Also on August 3, 2007, the NIJ, through DOJ's Office of Justice Programs, issued a press release stating that Plaintiff had not provided evidence sufficient to demonstrate to the satisfaction of the NIJ that the Dragon Skin armor would maintain its ballistic performance over its declared 6-year warranty period. FAC ¶ 35; Doc. 2, Ex. T. Pinnacle submitted additional information on several more occasions. Doc. 2 at Ex. N, O & P. After reviewing the additional evidence, NIJ nevertheless concluded that Pinnacle still had not sufficiently demonstrated that the dragon skin model would perform at the same level for six years. FAC ¶¶ 29-30. The NIJ identified several reasons why Pinnacle's evidence was insufficient and invited Pinnacle to provide additional evidence. Doc. 2 at Ex. R; *see also Pinnacle Armor*, 648 F.3d at 713. Pinnacle declined to submit any further evidence, choosing instead to file this lawsuit in November 2007.

**B.    Procedural History.**

As discussed above, Pinnacle alleged that NIJ's decision to revoke certification for the Pinnacle' product in question: (1) violated its procedural due process rights under the Fifth Amendment; and (2) was "arbitrary and capricious" in violation of the APA, 5 U.S.C. § 706(2)(A). Doc. 6. The district court dismissed both claims. Doc. 22. The Ninth Circuit affirmed on the Fifth Amendment claim, finding that the Due Process Clause does not require that NIJ grant a formal hearing before revoking a finding of compliance with its standards. 648 F.3d at 717. All that is required is "notice and an opportunity for hearing appropriate to the nature of the case." *Id* (emphasis in original). The Ninth Circuit found NIJ's procedures provided Pinnacle a "full and fair opportunity to be heard on its claims." *Id*.

The district court's found that because the then-operative 2005 Interim Requirements provided

4

NIJ discretion to remove armor from its compliance list "without statutory restraint," the NIJ's actions in this case were unreviewable under 5 U.S.C. § 701(a)(2), which precludes review of "agency action [that] is committed to agency discretion by law." The Ninth Circuit reversed, reasoning that "together, the 2005 Interim Requirements and the statute supply [a] standard against which we can judge the agency's decision-making." *Id*. at 719-20. The Ninth Circuit also found that the FAC sufficiently set forth an APA claim because it "alleges that the methods the NIJ uses to test body armor bear no relation to the standard set out in the Requirements—namely, that the armor will maintain its ballistic integrity over the life of the warranty" and further "alleges that the NIJ violated the APA by failing to provide the data upon which revocation of the Notice of Compliance was based." *Id*. at 721

**C.**   **The "06 Standard" and Mootness on Appeal.**

In 2008, during the pendency of the appeal, NIJ published a new set of requirements for the Body Armor Compliance Testing Program ("BACTP"). *Id*. at 714. The United States argued before the Ninth Circuit that the entire appeal was moot because the 2008 requirements, set forth in NIJ Standard - 0101.06 (the "06 Standard"), superseded the 2005 Interim Requirements at issue in this case. *Id.*

Among other things, the 2008 requirements state:

> Publication of this revision of the standard does not invalidate or render unsuitable any body armor models previously determined by NIJ to be compliant to either the NIJ 2005 Interim Requirements or the NIJ Standard-0101.04 Rev. A Requirements.

06 Standard, Doc. 53-3, at v. Focusing on this language, the Ninth Circuit refused to find the appeal moot:

> In order to be listed as compliant with the 2008 requirements, body armor must be submitted to and tested by the NIJ. The NIJ's new requirements are accompanied by sample laboratory configurations to help manufacturers prepare their products for the NIJ's tests. Although the NIJ accepted a written certification from an officer or independent evidence to establish conformity with its requirements under the 2005 Interim Requirements, under the 2008 requirements it no longer does so. Importantly, the 2008 requirements do not "invalidate or render unsuitable any body armor models previously determined by NIJ to be compliant [under] the NIJ 2005 Interim

Requirements," but advise agencies to "always require their procurements to meet or exceed the most recent and up-to-date version of this standard."

***

The 2008 Requirements explicitly state that they did not "invalidate or render unsuitable any body armor models previously determined by the NIJ to be compliant [under] the NIJ 2005 Interim Requirements." Thus, if Pinnacle succeeds on its claim and the court declares that its armor was compliant with the 2005 Interim Requirements, its armor will be presumptively compliant under the current standards. In this way, the 2005 Interim Requirements continue to have a "brooding presence, cast[ing] what may well be a substantial adverse effect on the interests of the petitioning parties." *Headwaters,* 893 F.2d at 1015 (quotation marks omitted).

The government argues that "any manufacturer wishing to participate in the Compliance Testing Program must submit its body armor for testing under the new [standards].... even if NIJ previously determined the body armor model compliant with the NIJ 2005 Interim Requirements." But this is a misstatement of the requirements. The 2008 requirements clearly state that if the armor was compliant under the 2005 Interim Requirements, it is still compliant under the 2008 requirements and does not need to be retested. Therefore, because the 2008 requirements do not require retesting of the armor deemed compliant under the 2005 Interim Requirements, whether the dragon skin model was compliant with the 2005 Interim Requirements remains a "present controversy." *Feldman,* 518 F.3d at 642 (citation omitted). The 2008 Requirements have no impact on this controversy.

*Id*. at 714-15 (emphasis added). In sum, the Ninth Circuit interpreted the 06 Standard's statement that "[p]ublication of this revision of the standard does not invalidate or render unsuitable any body armor models previously determined by NIJ to be compliant [under the 2005 Interim Requirements]" to mean that any armor compliant with the 2005 Interim Requirements was presumptively compliant with the 06 Standard.

**D.     Post-Remand Developments.**

On June 29, 2011, in response to the Ninth Circuit's "presumptive compliance" holding in *Pinnacle Armor,* 648 F.3d at 715, the NIJ issued an "Administrative Clarification" of the 06 Standard. *See* Doc. 53-2, ¶ 5 & Ex. 2. The Administrative Clarification directly addresses the 06 Standard's statement that that "[p]ublication of this revision of the standard does not invalidate or render unsuitable

any body armor models previously determined by NIJ to be compliant [under the 2005 Interim Requirements]," by clarifying that this language was intended "to make clear to criminal justice agencies that the release of a new standard should not be interpreted as a recommendation to remove body armor from service which had been previously found compliant by the NIJ [Compliance Testing Program] with a previous version of the standard." *Id.*, Ex. 2. The NIJ reiterated: "an agency's older armor may be considerably preferably to no armor at all until new armor determined by the NIJ CTP to be compliant with the current standard can be obtained." *Id.* Critically, "[t]he statement that older armors may not necessarily be considered to be 'unsuitable' for continued use in service until replaced <u>should not be read to suggest – in any way – that an armor model's compliance with a predecessor standard somehow equates to compliance under the most current, superseding standard</u>." *Id.* (emphasis added).

Although the NIJ-administered Bulletproof Vest Partnership ("BVP") grant program does not prohibit participating state and local law enforcement agencies from using their own funds to procure armor that does not comply with the most current NIJ standard, federal BVP grant money can only be used to purchase armor models the NIJ has deemed in compliance with the most recent current standard. *Id.* at ¶¶ 6-7. All armor models, including models found compliant under an old standard, must be tested against the 06 standard to be included on the Listing of Compliant Armor and thus eligible for federal grant money. *Id.* at ¶¶ 5-6.

**E.**      **Previous Motion to Dismiss**

In its previous motion to dismiss, the United States argued Plaintiff's APA claim was rendered moot because the 2005 Interim Requirements are no longer in effect and the NIJ clarified that it does not consider an armor's compliance under a superseded standard to be "presumptively compliant" under the current, 06 Standard. As the present motion arises directly from the order denying this motion without prejudice, relevant portions of the Court's prior decision are discussed in detail below.

7

### III. DISCUSSION

**A.      Motion to Dismiss APA Claim as Moot.**

    **1.      Fed. R. Civ. P. 12(b)(1).**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject-matter jurisdiction." Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981).

A challenge to subject matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). As explained in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004):

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

"If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Cervantez v. Sullivan*, 719 F. Supp. 899, 903 (E.D. Cal. 1989), rev'd on other grounds, 963 F.2d 229 (9th Cir. 1992). "The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.*; *see also Cassirer v. Kingdom of Spain*, 580 F.3d 1048, 1052 n. 2 (9th Cir. 2009), *rev'd on other grounds en banc*, 616 F.3d 1019 (9th Cir. 2010) (applying *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), to a facial motion to dismiss for lack of subject matter jurisdiction).

A Rule 12(b)(1) motion is considered a speaking motion -- or factual attack -- when the defendant submits evidence challenging jurisdiction along with its motion to dismiss. *Thornhill Publ'g*

*Co. v. Gen. Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979); *see also Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039-40 & n. 2 (9th Cir. 2003). A proper speaking motion allows the court to consider evidence outside the complaint without converting the motion into a summary judgment motion. *See Safe Air for Everyone,* 373 F.3d at 1039. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage,* 343 F.3d at 1039-40, n. 2. In a speaking motion, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Safe Air,* 373 F.3d at 1039.

Few procedural limitations exist in a factual challenge to a complaint's jurisdictional allegations. *St. Clair v. City of Chico,* 880 F.2d 199, 200-202 (9th Cir. 1989). The court may permit discovery before allowing the plaintiff to demonstrate the requisite jurisdictional facts. *Id.* A court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial, if the jurisdictional facts are separable from the merits. *Rosales v. United States,* 824 F.2d 799, 802-803 (9th Cir. 1987). However, if the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the court should dismiss for lack of jurisdiction only if the material facts are not in dispute and the moving party is entitled to prevail as a matter of law. Otherwise, the intertwined facts must be resolved by the trier of fact. *Id.*

Here, both sides have presented declarations containing facts relevant to the jurisdictional questions. As the material jurisdictional facts themselves are undisputed, there is no need for an evidentiary hearing.

## 2.     **Mootness Doctrine.**

Defendant again argues that the Court lacks subject matter jurisdiction over the case because

Plaintiff's APA claim is moot. An issue is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "The underlying concern is that, when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *Id.* (internal citations and quotations omitted). If the parties cannot obtain any effective relief, any opinion about the legality of a challenged action is advisory. *Id.* "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997) (internal citation and quotation omitted). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at 67.

Even if a case is technically moot, a case may nevertheless be justiciable if one of three exceptions to the mootness doctrine applies: (1) where a plaintiff "would suffer collateral legal consequences if the actions being appealed were allowed to stand"; (2) where defendant voluntarily ceased the challenged practice; and (3) for "wrongs capable of repetition yet evading review." *Ctr. for Biological Diversity v. Lohn,* 511 F.3d 960, 964–66 (9th Cir. 2007). "The party asserting mootness has a heavy burden to establish that there is no effective relief remaining for a court to provide." *In re Palmdale Hills Property, LLC*, 654 F.3d 868, 874 (9th Cir. 2011).

### 3.    This Court's Previous Rejection of Motion to Dismiss as Moot.

In the previous motion to dismiss, Defendant contended: "that because the Administrative Clarification now makes clear that there is no 'presumptive compliance' under the 06 Standard (i.e. that body armor manufacturers choosing to participate in the BACTP must submit their armor for testing under the 06 Standard regardless of whether the armor was deemed compliant under a prior standard),

the APA claim in this case is now moot." Doc. 61 at 12. The Court concluded that the Administrative

Clarification eliminated the "brooding presence" identified by the Ninth Circuit:

> The Ninth Circuit found that the issuance of the 06 Standard did not moot Plaintiff's APA claim because the 06 Standard contained language suggesting that armor compliant with an older standard was "presumptively compliant" with the 06 Standard. Therefore, the dispute articulated in the FAC's APA claim, which revolves entirely around whether Defendant lawfully revoked the Notice of Compliance with the 2005 Interim Requirements, was not moot because the 2005 Interim Requirements "continue[d] to have a 'brooding presence, cast[ing] what may well be a substantial adverse effect on the interests of the petitioning parties.'" *Pinnacle Armor*, 648 F.3d at 716 (internal citation omitted).

> The Administrative Clarification, issued by the agency that promulgated the 06 Standard, clarifies that the 06 Standard was never intended to render armor compliant with outdated standards "presumptively compliant" with the 06 Standard. Taken at face value, this effectively eliminates the "brooding presence" found by the Ninth Circuit because, according to the Clarification, compliance with the 2005 Interim Requirements does not equate to presumptive compliance with the 06 Standard.

> However, because the changed circumstances giving rise to Defendant's mootness argument was the result of Defendant's own act, the court must dig deeper. Even if a case is technically moot, a case may nevertheless be justiciable if one of three exceptions to the mootness doctrine applies, including the exception for a defendant's voluntary cessation of a challenged practice. *Ctr. for Biological Diversity v. Lohn,* 511 F.3d at 964–66. In light of this exception, the standard for demonstrating that a case has been mooted by a defendant's voluntary conduct is "stringent." *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000). Where circumstances suggest a policy change designed to alter challenged conduct was motivated by a desire to avoid further litigation, courts consider whether the change in conduct is accompanied by circumstances indicating the change is a "genuine" act of "self-correction." *See Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir.1991); *see also White*, 227 F.3d at 1243 (finding challenge to agency's investigatory practices moot after issuance of memorandum by agency official that "represents a permanent change in the way [the agency] conducts investigations, not a temporary policy that the agency will refute once this litigation has concluded").

> Although these standards cannot be applied with perfect precision to the present circumstances, because the Administrative Clarification does not directly reverse the conduct challenged in this case (the revocation of the Notice of Compliance), the standards are instructive. Here, the agency has issued a formal interpretation of its 06 Standard. Although the agency admits it was motivated to do so by the Ninth Circuit's ruling, *see* Tillery Decl., Doc. 53, ¶ 5, the Administrative Clarification is a genuine effort to clarify what its own regulation was intended to accomplish. The Administrative Clarification represents a public commitment by the agency to interpret its regulation in a particular manner. Such interpretations are entitled to some degree of judicial deference,

*see United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (giving *Skidmore* deference to interpretations contained in agency manuals or enforcement guidelines).... The Administrative Clarification offers a reasonable interpretation of the 06 Standards and nothing in the record suggests the position set forth in the Clarification conflicts with any prior interpretation.

The issuance of the Administrative Clarification removes the "brooding presence" identified by the Ninth Circuit. In other words, in light of the Administrative Clarification, even if this court were to vacate the NIJ's decision to revoke the Notice of Compliance with the 2005 Interim Requirements, this would not automatically render the subject body armor compliant with the current standards and therefore eligible for reimbursement under the BVP.

Doc. 61 at 14-16 (emphasis added).

Yet, the Court recognized that dismissal on mootness grounds was nevertheless inappropriate because, according to the June 21, 2012 Declaration of Murray Neal, the inventor of the Dragon Skin body armor and Pinnacle's President and CEO, individual officers would continue to purchase dragon skin "so long as the armor meets one of the NIJ standards." Doc. 57-1 at ¶ 12. Thus, Mr. Neal stated, "maintaining compliance status under the 2005 Interim Requirements continues to be important [] to Pinnacle Armor, Inc...." *Id.*

The Court also credited Plaintiff's alternative argument that the 06 Standard had not completely displaced the 2005 Interim Requirements:

[A]ccording to Mr. Neal, NIJ and Plaintiff worked together to develop an extensive protocol under the 2005 Interim Requirements for the testing of flexible rifle-defeating body armor. *Id.* at ¶ 13. Yet, neither this protocol, nor any other protocol for flexible rifle defeating body armor, was included in the 06 Standard. *Id.* According to Mr. Neil, this means that "the only ... protocol suitable for testing Pinnacle Armor's novel Dragon Skin technology is the 2005 Interim Requirements." *Id.* In light of this purported gap in the 06 Standard, Plaintiff maintains that the 06 Standard has not completely displaced the 2005 Interim Requirements.

In response, rather than provide any evidence or legal argument that would help resolve the extent to which aspects of the 2005 Interim Requirements may have survived the promulgation of the 06 Standard, Defendant simply asserts that this is "a pure question of law the Court must answer." Doc. 59. This fails to satisfy Defendant's heavy burden to establish mootness, particularly in light of the legal standard that requires the Court view disputed facts in a light most favorable to Plaintiff.

*Id.* at 19.

### 4.        Present Motion to Dismiss As Moot.

Defendant makes only one new argument here, taking aim at the alternative argument that the 06 Standard had not completely displaced the 2005 Interim Requirements. Specifically, having now apparently reviewed the text of the 06 Standard with greater care, Defendant points out that the 06 Standard expressly states that "[w]hen manufacturers seek NIJ compliance of their armor to this standard and the armor contains unique materials … that may not have been anticipated when this standard was drafted, NIJ may modify the test methods of the standard to take those features into account." Doc. 64-1 at 13 (citing 06 Standard at v). Defendant argues that because "under the new standard, NIJ may modify the test protocols to account for armor that contains unique materials, such as plaintiff's Dragon Skin insert, when the circumstances require it… there is no dispute regarding whether the 06 Standard supersedes the 2005 Interim Requirements in its entirety – it does." *Id.*

Plaintiff admits that the 06 Standard contains a provision that allows NIJ to modify test protocols under certain circumstances, but insists that those circumstances do not apply here, because no "unique materials" are present. Doc. 66 at 10. Plaintiff points to communications between Pinnacle and administrators of the BACTP program, in which those administrators indicate that Plaintiff's product presented a new and different "design," rather than a unique material. *Id.* But, Defendant points to the full text of the language in the 06 Standard, which provides:

> When manufacturers seek NIJ compliance of their armor to this standard and the armor contains unique materials or <u>forms of construction</u> that may not have been anticipated when this standard was drafted, NIJ may modify the test methods of the standard to take those features into account.

06 Standard at v. The language "forms of construction" encompasses the type of "new design" presented by Pinnacle's Dragon Skin. The 06 Standard therefore provides a mechanism by which Pinnacle could

13

submit Dragon Skin for compliance testing. The alternative argument that the 06 Standard does not completely displace the 2005 Interim Standards must therefore be rejected.[3]

However, Defendant does not address the first reason cited by the Court when it rejected the previous motion to dismiss as moot, namely, that Plaintiff presented evidence to support a finding that reinstatement of certification under the 2005 Interim Standards would be meaningful to Pinnacle because some officers would continue to purchase dragon skin "so long as the armor meets one of the NIJ standards." These facts are competently presented by the Pinnacle's CEO and are undisputed. *See* Doc. 66-1 at ¶ 9. Plaintiff therefore has presented evidence that it retains "a legally cognizable interest in the outcome." *City of Erie,* 529 U.S. at 287. The "underlying concern" in a mootness dispute is whether it has become "impossible for the court to grant any effectual relief whatever to the prevailing party." *Id.* Here, if Plaintiff prevails on its APA claim, one available remedy is vacatur of the agency's unlawful decision. *Defenders of Wildlife v. U.S. Environmental Protection Agency,* 420 F.3d 946, 978 (9th Cir. 2005) ("Typically, when an agency violates the Administrative Procedure Act … we vacate the agency's action and remand to the agency to act in compliance with its statutory obligations.") (overturned on unrelated grounds in *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007)). This would arguably reinstate NIJ's earlier certification of Dragon Skin under the 2005 Interim Standards and offer Plaintiff some relief.

Defendant's motion to dismiss this case as moot is DENIED.

//

**5.**     **Motion for Summary Judgment**

**a.**     **Standard of Decision.**

---

[3] Although this finding is not dispositive of the motion to dismiss as moot, it has consequences for Plaintiff's case. Because the 06 Standards apply to Dragon Skin, any claim based upon injury stemming from lack of certification under the most recent standard is moot. Therefore, Plaintiff cannot rely upon any such injury (i.e., loss of sales under the BVP program, which requires certification under the most recent standard) to support standing.

Defendant moves for summary judgment on the issue of standing and on the merits of Plaintiff's APA claim. Slightly different standards apply to each.

The traditional analysis applies to standing, a jurisdictional prerequisite for which Plaintiff bears the burden of proof at all stages of its case. Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where, as here, the movant seeks summary judgment on a claim or issue on which the non-movant bears the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* "If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984; *see also Lujan v. National Wildlife* Fed'n, 497 U.S. 871, 888-89 (1990).

A slightly modified approach is used when evaluating motions for summary judgment in an APA case:

> A court conducting APA judicial review may not resolve factual questions, but instead determines "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella,* 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (quoting *Occidental Eng'g Co. v. INS,* 753 F.2d 766, 769 (9th Cir.1985)). "[I]n a case involving review of a final agency action under the [APA] ... the standard set forth in Rule 56[a] does not apply because of the limited role of a court in reviewing the administrative record." *Id.* at 89. In this context, summary judgment becomes the "mechanism for deciding, as a matter of law, whether the agency action is

supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* at 90.

*San Joaquin River Group Auth. v. Nat'l Marine Fisheries Serv.,* 819 F. Supp. 2d 1077, 1083-84 (E.D. Cal. 2011).

      **b.**    **Standing.**

      **(1)**    **General Legal Framework.**

      Standing is a judicially created doctrine that is an essential part of the case-or-controversy requirement of Article III. *Pritikin v. Dept. of Energy*, 254 F.3d 791, 796 (9th Cir. 2001). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To have standing, a plaintiff must show three elements:

> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted).

      The Supreme Court has described a plaintiff's burden of proving standing at various stages of a case as follows:

> Since [the standing elements] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

*Id.* at 561.

Standing is evaluated on a claim-by-claim basis. "A plaintiff must demonstrate standing 'for each claim he seeks to press' and for 'each form of relief sought.'" *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). "[S]tanding is not dispensed in gross...." *Lewis v. Casey*, 518 U.S. 343, 358, n.6 (1996).

> The actual-injury requirement would hardly serve the purpose ... of preventing courts from undertaking tasks assigned to the political branches[,] if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy all inadequacies in that administration.

*Id*. at 357.

### (2)    This Court's Previous Ruling on Standing.

In addressing the previous motion to dismiss, the Court rejected Defendant's argument that Plaintiff did not have standing to pursue a claim based on this type of alleged injury:

> Rather than responding to this factual assertion, Defendant asserts that Plaintiff does not have standing to pursue a claim based upon this type of alleged injury because the injury is not redressable. Doc. 59 at 6. More specifically, Defendant argues that redress of such an injury "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id*. at 7 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)). Defendant glosses over the nuanced nature of this aspect of the standing jurisprudence, which was discussed at length by the U.S. Supreme Court in its seminal standing decision:
>
> > When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When, however ... a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction-and perhaps on the response of others as well. The existence of one or more of the essential elements of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts

17

cannot presume either to control or to predict," *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (opinion of KENNEDY, J.) [additional citation]; and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. [Citation] Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily "substantially more difficult" to establish. [Citation]

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). According to Lujan, the unfettered choices test is far more likely to be relevant in a case where the challenged government regulation is of someone other than the plaintiff.

Even if the "unfettered choices" test does apply more generally here, the mere intercession of a third party does not necessarily doom standing. A "chain of causation [may have] more than one link," so as long as the connection between the injury and cause is not "hypothetical or tenuous." *Nat'l Audubon Soc. v. Davis*, 307 F.3d 835, 849 (9th Cir.2002). In *Davis*, the Ninth Circuit found that the Audubon Society, an organization dedicated to protection and observation of birds, had standing to challenge a regulation that forbade the use of a certain type of game trap because "[r]emoval of the traps leads to a larger population of predators, which in turn decreases the number of birds and other protected wildlife." *Id*. The Ninth Circuit reasoned: "This chain of causation has more than one link, but it is not hypothetical or tenuous; nor do appellants challenge its plausibility." *Id*.

 [A]t the motion to dismiss stage, Plaintiff has presented evidence to support a finding that officers may purchase armor not in compliance with the most recent NIJ standard "so long as the armor meets one of the NIJ standards." Doc. 57-1 at ¶ 12. Thus, "maintaining compliance status under the 2005 Interim Requirements continues to be important [] to Pinnacle Armor, Inc...." *Id*. This is sufficient to establish standing at the motion to dismiss stage.

Doc. 61 at 17-19.

### (3)   Defendant's Motion for Summary Judgment Re Standing.

Defendant now moves for summary judgment on the issue standing, arguing that Plaintiff's factual submissions are insufficient to prove standing. "In response to a summary judgment motion ... the plaintiff can no longer rest on 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' ... which for purposes of the summary judgment motion will be taken to be true." *Lujan* 504 U.S. at 561.

In opposition to the motion for summary judgment, Plaintiff submits the September 26, 2012

18

Declaration of Murray Neal, the President and CEO of Pinnacle Armor, who states:

> 9.      Numerous of officers "walk in" each year and order body armor from Plaintiff. These officers generally cover a part of the purchase price and are authorized to buy so long as the armor meets one of the NIJ standards. These officers also consider the reputation of Plaintiff's armor products in the law enforcement and military community in connection with their purchase decisions. Although it my belief that despite the actions of the NIJ, there exists a minority of officers who are knowledgeable and understand the factual background and history of the singular warranty based compliance revocation by the NIJ who still regard Dragon Skin and its related police level body armor as the preeminent body armor in the world. On the other hand, it is my observation that the majority of officers do not understand the critical details of the factual background and history of the singular warranty based compliance revocation by the NIJ, and therefore, Plaintiff's reputation in the law enforcement community has been severely damaged by the NIJ revocation of compliance. Thus, maintaining compliance status under the 2005 Interim Requirements continues to be important both to Pinnacle Armor, Inc. and to law enforcement men and women as a whole now and in the foreseeable future.

> 10.     On August 3, 2007, the NIJ informed Plaintiff that its Dragon Skin flexible rifle defeating body armor was deemed no longer compliant with the 2005 Interim Requirements and would be removed from the NIJ's Listing of Compliant Armor. The effect of this revocation of compliance has resulted in the loss of sales of body armor by Pinnacle Armor, Inc. In that same regard, law enforcement agencies who desire to purchase the Dragon Skin flexible rifle defeating body armor are no longer able to do so because of the lack of compliance with NIJ standards. This is so even though the revocation was due not to failure of any of Pinnacle Armor Inc.'s body armor vests, but because of a perceived warranty issue by the NIJ. I am informed and believe that should NIJ compliance be reinstated under the 2005 Interim Requirements, law enforcement agencies would submit new purchase orders for the Dragon Skin flexible rifle defeating body armor as they would be able to obtain reimbursement from non-BVP programs, such as FEMA and federal RICO.

Doc. 66-1.

To withstand a motion for summary judgment on an issue for which the plaintiff bears the

burden of proof, a plaintiff must produce "[a]t least some 'significant probative evidence.'" *T.W. Elec.*

*Serv. v. Pac. Elect. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank of*

*Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely

colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred*

*Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Further, the Ninth Circuit has "refused to find a

'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."

*Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) (citing *Kennedy v. Applause,*

*Inc.,* 90 F.3d 1477, 1481 (9th Cir. 1996)); *see also United States v. $133,420.00 in U.S. Currency,* 672 F.3d 629, 638-39 (9th Cir. 2012). In *Villarimo,* for example, a plaintiff in a sex discrimination action presented her own affidavit, asserting that male co-workers were punished less severely than she was for making a particular mistake on the job. 281 F.3d at 1059. The Ninth Circuit noted that the plaintiff cited only her own "self-serving" and "uncorroborated" affidavit in support of this factual assertion, without explaining how she knew this to be true. *Id.* at 1059 n.5.

Defendant maintains that the above-quoted paragraphs from the Neal Declaration suffer from the same defect, namely that they are "self-serving" and "uncorroborated." Doc. 64-1 at 14. However, Defendant ignores more recent Ninth Circuit authority that qualifies *Villarimo.* The Ninth Circuit has recognized that a party's affidavits are always self-serving and therefore "[i]n most cases, [ ] that an affidavit is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact. Only in certain instances-such as when a declaration states only conclusions, and not such facts as would be admissible in evidence can a court disregard a self-serving declaration for purposes of summary judgment." *S.E.C. v. Phan,* 500 F.3d 895, 909 (9th Cir.2007) (internal quotation marks, alterations, and citations omitted). *Phan* distinguished *Villiarimo* on the basis that the affidavit in *Villiarimo* contained facts outside of the declarant's personal knowledge. *Id.* at 910. *Phan* noted that information based on private first person knowledge will often lack corroboration, but that this should not lead to defeat at the summary judgment stage. *Id.* ("it is unremarkable that the defendants could not otherwise corroborate their personal conversations."). "A judge must not grant summary judgment based on his determination that one set of facts is more believable than another." *See Nelson v. City of Davis,* 571 F.3d 924, 929 (9th Cir. 2009).

Nevertheless, even allowing for a plaintiff's own affidavit, declaration, or deposition to contest essential facts singlehandedly, the non-moving party must still identify specific facts. Plaintiff must

present sufficient evidence on which a rational trier of fact could find its favor. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). "Where the facts contained in an affidavit are 'neither in the form of legal conclusions nor speculative, but are material facts based on [the affiant's] personal recollection of the events,' the affidavit is not conclusory." *United States v. $223,178.00 in Bank Account Funds*, 333 F. Appx 337, 338 (9th Cir. 2009) (quoting *Orsini v. O/S Seabrooke O.N.*, 247 F.3d 953, 960 n. 4 (9th Cir. 2001)).

Mr. Neal, as the CEO and President of Pinnacle, is certainly in the position to know whether officers "walk-in" off the street to purchase armor without a subsidy. He states, under penalty of perjury, that they do so. Defendant has presented no evidence to the contrary. For purposes of summary judgment, this is sufficient to establish Pinnacle's standing. Defendant's motion for summary judgment that Pinnacle lacks standing is DENIED.

### c.   Merits.

Finally, Defendant moves for summary judgment on the merits of Plaintiff's APA claim, arguing, based upon the revised Administrative Record ("AR"), that the NIJ lawfully revoked Dragon Skin's compliance status. Doc. 64-1 at 23. Among other things, Defendant maintains that "[t]he record contains internal memoranda that explain in detail the NIJ's technical assessment of Plaintiff's three submissions and the basis for its conclusion that none of the submissions demonstrated that the armor model at issue would maintain its ballistic performance over its declared warranty period when subjected to environmental stresses, including extreme temperature cycling." Doc. 64-1 at 17.

### (1)   Rule 56(d) Request.

In response, Plaintiff maintains that the AR is "woefully incomplete," listing a number of documents/items it claims were wrongfully omitted from the AR. Doc. 66 at 16-18. In addition, Plaintiff requests and opportunity to file a motion for "expanded discovery." *Id.* at 24. Plaintiff correctly points

out that in the Ninth Circuit, a court may expand its review beyond the administrative record prepared

by the agency in certain, narrow circumstances: "(1) if necessary to determine whether the agency has

considered all relevant factors and has explained its decision, (2) when the agency has relied on

documents not in the record, or (3) when supplementing the record is necessary to explain technical

terms or complex subject matter." *Southwest Ctr. for Biological Diversity v. United States Forest Serv.*,

100 F.3d 1443, 1450 (9th Cir. 1996) (internal citations and quotations omitted). Whether and to what

extent Plaintiff is entitled to supplement the record is not yet before the court for decision because

Plaintiff has yet to file a relevant motion.

Federal Rule of Civil Procedure 56(d) permits a court to defer consideration of or deny a motion

for summary judgment in order to allow time for Plaintiff to obtain additional evidence, but only if

Plaintiff has "shown by affidavit or declaration that, for specified reasons, it cannot present facts

essential to justify its opposition" without that additional evidence. Here, the only relevant declaration is

that filed by Murray Neal in connection with the Plaintiff's opposition to the present motion. Doc. 66-1.

Mr. Neal lists a number of documents that he calls "glaring" examples of ways in which the

administrative record is incomplete. *Id*. Although the significance of each of these documents to

Plaintiff's defense is not clearly articulated, it appears that many of these documents go to the issue of

whether Defendant's interpretation of test results was rational. Although the 56(d) showing is weak, the

Court believes a brief deferral of the instant motion is warranted to permit a closer examination of

whether the record should be supplemented to include documents already in Plaintiff's possession. In

contrast, nothing in Plaintiff's opposition or the Neal declaration supports permitting further discovery

in any traditional sense before the present motion is adjudicated.

## (2)    Merits Briefing Issues.

The Court is concerned about Plaintiff's counsel's grasp of APA jurisprudence. For example,

22

Plaintiff argues that there are "material disputes" of fact as to whether the NIJ arbitrarily and capriciously revoked Dragon Skin's compliance status. Doc. 66 at 16. This argument demonstrates a fundamental misunderstanding of judicial review under the APA, which is based exclusively on the administrative record.[4] *See San Joaquin River Group Auth.*, 819 F. Supp. 2d at 1083-84.

Likewise, on the merits, Plaintiff argues that NIJ's decision "reflects a fundamental lack of understanding of the technology" behind Dragon Skin, Doc. 66 at 19; that the "Department of Defense information relied upon by NIJ has been roundly criticized," *id*. at 21; and that "the passage of five years since compliance status was revoked without any ballistic failure … demonstrates that the NIJ Warranty concerns [were] baseless, arbitrary, and capricious," *id*. at 23-24. These arguments fail to acknowledge the relevant standards under the APA, which govern a Court's review of agency action. 5 U.S.C. § 706(2). For example, under the APA's "arbitrary and capricious" standard, a court must defer to the agency on matters within the agency's expertise, unless the agency completely failed to address some factor, consideration of which was essential to making an informed decision. *Nat'l Wildlife Fed'n v. NMFS,* 422 F.3d 782, 798 (9th Cir. 2005). A court "may not substitute its judgment for that of the agency concerning the wisdom or prudence of the agency's action." *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010).

This is the busiest district court in the nation. This Court cannot and will not make legal arguments on behalf of any party. Further disregard for relevant precedent will not be tolerated.

## IV. <u>CONCLUSION</u>

For the reasons set forth above:

---

[4] It is for this reason that, although Local Rule 260(e) directs that each motion shall be accompanied by a "Statement of Undisputed Facts" that shall enumerate each of the specific material facts on which the motion is based and cite the particular portions of any document relied upon to establish that fact, in APA cases, such statements are generally not required because all relevant facts are contained in the agency's administrative record. *San Joaquin River Group Auth.,* 819 F. Supp. 2d at 1084.

(1) Defendant's renewed motion to dismiss as moot is DENIED;

(2) Defendant's alternative motion for summary judgment that Plaintiff lacks standing is DENIED;

(3) Decision on Defendant's alternative motion for summary judgment on the merits is DEFERRED pursuant to Fed. R. Civ. P. 56(d), and the following order pursuant to Rule 56(d)(3) is entered:

(a) Plaintiff is granted until November 23, 2012 to file a motion to supplement the administrative record. This motion should be accompanied by detailed justifications explaining why each and every document submitted meets one of the *Southwest Center* exceptions. Plaintiff shall set the motion for hearing in accordance with the local rules, with oppositions and replies to follow accordingly.

(b) No additional discovery will be permitted prior to adjudication of the motion for summary judgment, as Plaintiff has failed to provide specific reasons, as required by Rule 56(d), justifying an extended delay to permit additional discovery.

(c) Once any motion to supplement is decided, the Court will address the need for further briefing or additional proceedings.

**SO ORDERED**
**Dated: October 26, 2012**

/s/ **Lawrence J. O'Neill**
**United States District Judge**

24